ADLER; BRAGG *v*. STATE OF INDIANA

[No. 30,958. Filed April 20, 1967.]

*Tom G. Jones,* of Franklin, for appellants.

*John J. Dillon,* Attorney General, and *Charles J. Deiter,* Deputy Attorney General, for appellee.

PER CURIAM.—This is an appeal from a final judgment of the Johnson Circuit Court in which a jury found the appellants guilty of the offense of robbery in two counts.

The evidence reveals that when John Lee Williams, twenty-nine years of age, left home on the evening of December 16, 1964, he had about $100.00 on his person in a billfold and a diamond ring worth about $1,000.00. That evening Williams, apparently intoxicated, met the two appellants and Mrs. Sizemore in a bar at Columbus, Indiana. It appears that they were drinking intoxicating liquors; that there was a scuffle between appellant Adler and Williams when Williams put his arm around Mrs. Sizemore at times. Finally, all of the parties got

into a Volkswagen driven by the appellant Adler; Mrs. Sizemore sat in the front with Adler, and Bragg and Williams sat in the rear seat. The story Mrs. Sizemore told was that as they drove down the highway Williams started kicking, the car went off the road, and Adler was finally pushed out of the car by Williams. After some more scuffling between Bragg, Williams and Adler, they all got back in the car. Thereafter they drove down the highway a little farther. Something was said about pushing Williams out of the car, and finally Williams ended up on the roadside and the other parties drove away. Thereafter Mrs. Sizemore says that Bragg said Williams didn't have very much money on him and that the ring was tight-fitting.

A state policeman testified that on December 17, 1964 he found a body lying in a ditch on the east side of county road 300 West face down, and there was a trench coat on top of the body. The hands of the deceased did not have any ring on them. There was no wallet found on the body. It was identified as John Lee Williams.

The main contention of the appellants is that they did not have a fair trial because Mrs. Sizemore was coerced, threatened, and illegally detained and was also offered immunity to testify against the appellants. The further contention is that the prosecuting attorney was guilty of misconduct and improprieties in threatening Mrs. Sizemore and in making improper statements in the closing argument, primarily using the theme that the appellants were guilty of homicide, although the charge was merely robbery.

The evidence with reference to the treatment of Mrs. Sizemore is that the Bartholomew county sheriff, with deputies, went to Spencer, Indiana where she lived, as part of the investigation of the death of Williams. From there it is claimed she was taken to Columbus against her wishes and placed in jail for four days without any charge being filed against her; that she was there threatened with being charged as an acces-

sory to a murder and that her children would be taken away from her, while on the other hand, she would be granted immunity if she would willingly testify at the trial against the appellants.

Appellants claim their constitutional rights were violated because the alleged constitutional rights of Mrs. Sizemore, a witness, were violated. All the cases cited by the appellants to support this principle are cases where a defendant's rights in a criminal case were involved. Constitutional rights are personal, and violation of a third party's constitutional rights cannot be claimed by a defendant in his trial. It is well settled that an illegal search of a third party's property (other than that of the defendant) cannot be made the basis of a claim of a defendant for the exclusion of such evidence. *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439.

It likewise follows that the same principle is involved with reference to the alleged violation of Mrs. Sizemore's personal rights. If she were a defendant in this case, the principle urged by the appellants would be applicable.

At the same time, no one can exclude the relevant testimony of a witness from a trial as long as such witness is competent under the statute, regardless of the fact that such witness may be threatened, bribed, or influenced.

The statute fixes who shall be competent witnesses. Acts 1905, ch. 169, § 235, p. 584, being Burns' Ind. Stat. Anno. § 9-1603 (1956 Repl.) The Criminal Code provides that the competency of witnesses in criminal cases shall be the same as that in civil cases, and further specifically provides that an accomplice may testify. At common law a convict was an incompetent witness. 30 I. L. E., *Witnesses,* sec. 25, p. 18. However, under our code it was felt that justice demanded that such a witness should be a competent witness, but that his conviction or other matters affecting his credi-

bility could be shown. Acts 1881 (Spec. Sess.), ch. 38, § 284, p. 240, being Burns' Ind. Stat. Anno. § 2-1725 (1946 Repl.)

All of the evidence with reference to bribery, threats and other influences which affect and influence the credibility of the witness and the weight to be given the testimony of a witness should certainly go before the jury. *Keesier* v. *State* (1900), 154 Ind. 242, 56 N. E. 232.

In this case it appears all such testimony with reference to the alleged abuse of the witness was presented to the jury, including the circumstances and facts as to the immunity granted by the prosecuting attorney to Mrs. Sizemore.

The record likewise shows that the prosecuting attorney, outside the presence of the jury during the trial and after Mrs. Sizemore had been on the stand, warned her "you had better shape up or I'll have you in front of another judge." This evidence was also properly given to the jury for their consideration in weighing the credibility of the testimony of Mrs. Sizemore. In other words, there is no law which would permit any court to exclude an otherwise competent witness from testifying as to relevant matters and deprive parties on either side of such testimony merely because one side or the other attempted to influence the testimony of the witness by legal or illegal means. This right includes a frank disclosure of any promises by the State or the prosecuting attorney to grant immunity to a witness and, as we recently held, any rewards offered to a witness. *Bewley* v. *State* (1966), 247 Ind. 652, 220 N. E. 2d 612.

It is important that the jury have all the circumstances and facts affecting the credibility of the witness in order to properly evaluate the testimony of such witness. Those are matters for the jury to consider—not a court on appeal. We do not weigh the evidence. We can only determine whether or not there is any evidence to support the conviction. *Hammond* v. *State* (1928), 200 Ind. 343, 163 N. E. 2d 262.

However, there is in this case, as we stated previously, conduct used by the State in the prosecution of this case that appears to us to result in an unfair trial to the defendants. The charge in this case was robbery. There was no charge of homicide against these appellants. Although one may suspect that because a death resulted during this drunken spree (from causes unknown), the State felt compelled to bring charges against the persons involved. Had no death resulted because of the slender evidence with reference to robbery, this case would not have attained the importance it has at this time. Nevertheless, the prosecutor throughout the case and in the closing argument, seemed to want to make a homicide case out of the prosecution. One of the specifications for a new trial is the following colloquy which took place during the final argument by the State:

> *"Prosecutor:* Well consider John Williams, if you will. Where's he at today? Let's don't overlook them, we want to talk about all these things, the rights these individuals had here, sure I'm a lawyer. I'm not going to be prosecutor all my life, but I do have a stake in this community and don't even live in it. Don't forget that John Williams wasn't given the opportunity to live, taken in the very flower of his manhood and—
>
> *"Attorney Cline:* Your honor, I'm going to object to Prosecutor's remarks in connection with the death, we've gone through this before, the jury should be—
>
> *"Prosecutor:* We have established the fact that he's dead.
>
> *"Attorney Jones:* Let the judge rule.
>
> *"Court:* Just a moment. Well, Mr. Wilson, it is established by all the evidence he's dead, and also established by all the evidence that the cause of his death is unknown and it should not be attributed to these defendants."

This incident must be coupled with the fact that the prosecuting attorney thumbtacked a picture of the deceased's body to a board, leaving it in the jury's sight for approximately 45 minutes while the instructions were read, and in the closing argument, also exhibiting this picture, made the following remarks:

"But if you permit this sort of thing to go unpunished, the question is, how are you going to live. You just decide, you've got a family, you just decide whether or not it's going to be your boy that's going to be the next one, just like that one."

This was not a prosecution for homicide against the appellants. Robbery was the essential issue. Proof of the actual taking resting solely on the testimony of Mrs. Sizemore, the question here was whether or not the testimony of Mrs. Sizemore was to be believed by the jury with reference to the statement that she heard one of the appellants make, which would infer that a ring and money was taken from Williams. In our opinion, the whole case of robbery hinged upon the credibility of this statement by this witness. Although we do not feel that the offer of immunity by the prosecutor to this witness or the alleged abuse of the law enforcement officers of this witness at the time of the investigation of this crime would make her incompetent, as we have stated previously, still, when we couple the promise of immunity with the threats of the prosecuting attorney towards this vital witness and his over-exuberance in the closing argument in exhibiting the picture of the dead body of Williams in emphasizing that appellants were to be blamed for his death, we have a background and circumstance which leads us to believe that the appellants did not receive a fair trial under the circumstances. 53 Am. Jur., *Trial,* § 459 (1945). By this we do not mean to say that merely because the prosecutor offered immunity to a witness, it constituted misconduct, since the law permits such discretion by the prosecuting attorney. 24 I. L. E., *Prosecuting Attorneys,* Sec. 3, p. 20.

With the prejudicial conduct referred to during the argument to the jury, we have a situation created which in sum total makes the trial unfair.

Judgment reversed and a new trial ordered.

Hunter, J., concurs in result.

NOTE.—Reported in 225 N. E. 2d 171.