WAYNE E. KEYSER *v.* STATE OF INDIANA.

[No. 3-673A68. Filed June 27, 1974.]

Patrick Brennan, Michael P. Scopelitis, Patrick Brennan and Associates, of South Bend, for appellant.

Theodore L. Sendak, Attorney General, Robert E. Dwyer, Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Appellant Wayne E. Keyser (Keyser) was charged by indictment with first degree murder following a shooting at his home. Trial was held before a jury which found Keyser guilty of the lesser included offense of voluntary manslaughter. Judgment was entered on the verdict and Keyser was committed to the custody of the Indiana Department of Corrections for a period of not less than two nor more than 21 years. Keyser's timely motion to correct errors was subsequently overruled, and this appeal followed.

The only issue to be considered on appeal is whether the defendant received a fair and impartial trial.

During the direct examination by the prosecutor of the only witness who testified to the State's version of the shooting, the following occurred:

"Q. Now, Mr. Guilford, with relation to your testimony here today, you have received certain threats, have you not?
"A. Yes, sir.
"Q. And can you tell the Court and Jury what threats you have received?
"A. Well about—
"MR. BRENNAN: Well, if the Court please, unless this Defendant is connected with any threats I would most respectfully object to it.

"THE COURT: Mr. Bailiff take the Jury out."

The trial court sustained the objection after hearing the arguments of counsel and taking a recess to research the matter.

After eliciting testimony from the witness that he had made a statement inconsistent with his version of the shooting given during the trial, the prosecutor then initiated the following exchange:

"Q. Can you tell me, *why* did you make that change in your statement? *Why* did you say that Keyser swung the shotgun at you rather than the way you have testified here today?

"A. Because I was threatened. My life was threatened, and I was offered some money to which I could use the money to leave town.

"Q. So that you were offered money to make that statement different from the way it is today, is that correct?

"A. Yes, sir.

"Q. How much money were you offered?

"A. $3,000.

"MR. BRENNAN: If your Honor please, we object and move to have the answer stricken, and I think the Court has already ruled on that.

"THE COURT: The objection will be sustained. The answer of the Witness will be stricken. The Jury will be ordered to disregard the same.

"MR. BRENNAN: And I don't know if that would even, Your Honor, in this instance be possible to disregard such a situation. On the ground because of that *the defense would most respectfully move for a mistrial.*

"THE COURT: I have instructed the Jury. The Jury will disregard it and not take it into consideration whatsoever in any deliberation on their verdict. The motion of the defense will be overruled." (Emphasis supplied.)

It is settled law that,

"The manufacture, destruction, or suppression of evidence in defense of a criminal charge is in the nature of an admission of guilt and, though not conclusive, is to be given consideration as such by the jury. Wilson v. United States, 162 U.S. 613, 16 S. Ct. 895, 40 L. Ed. 1090; Commonwealth v. Webster, 5 Cush., Mass. 295, 52 Am. Dec. 711; Keesier

v. State, 154 Ind. 242, 56 N.E. 232; * * * ." *United States* v. *Graham* (2d Cir. 1939), 102 F.2d 436, at 442-443. See also: *Adler et al.* v. *State* (1967), 248 Ind. 193, 225 N.E. 2d 171.

The jury should have before it all facts and circumstances affecting the credibility of the witnesses it hears. *Adler et al.* v. *State, supra.*

However, the desirability of so informing the jury in a criminal case must be balanced against any prejudice to the defendant generated by such evidence. Since a criminal defendant is the primary individual who could benefit from the bribing or absence of a witness who might testify against him, the inference is strong that he has procured these acts when evidence of them is introduced at his trial. No evidence or testimony was presented, or attempted to be presented, to advise the jury of whether or not the defendant was involved in the attempt. No connection between the defendant and the attempted bribe and threat was remotely shown.

We think that in this latter instance such evidence becomes so prejudicial to a defendant that no jury could be expected to apply it solely to the question of the credibility of the witness before it and not to the substantial prejudice of the defendant. For this reason, the testimony quoted above amounted to an "evidential harpoon" thrust into the defendant herein. Cf.: *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312.

It is apparent that the attempted removal of the resulting prejudice through an instruction to the jury was inadequate to expiate the effect of the testimony, when the testimony and the atmosphere created in the trial courtroom are examined in light of the criteria enunciated in *White* v. *State, supra,* as to the adequacy of jury admonishments in these situations. This is especially true when the fact is considered that the State's entire case depended upon the testimony of the witness quoted above.

Prejudice to the defendant is further aggravated by the State's attempt to impeach the veracity of the defendant's testimony by proving that he was convicted of a crime which did not involve dishonesty or false statements. This was clearly improper. *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210; *Dexter* v. *State* (1973), 260 Ind. 608, 297 N.E.2d 817.

In a case otherwise free from prejudice, such error may not warrant reversal. However, when coupled with the additional prejudice to the rights of the defendant discussed hereinabove, such a disposition becomes necessary.

The substantial prejudice inuring to the defendant requires that this case be reversed and remanded for a new trial.

Reversed and remanded.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 312 N.E.2d 922.