Cletus Coy COX, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–380A83.

Court of Appeals of Indiana, Fourth District.

June 29, 1981.

John M. Sorensen, Donahue & Sorensen, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant, Cletus Coy Cox, appeals his conviction of theft, Ind. Code 35–43–4–2, after jury trial. The pertinent portions of the charging information read:

"On or about the 18th day of January, 1979, in Tippecanoe County, State of Indiana, Cletus Coy Cox did knowingly exert unauthorized control over property of Chester Parker [sic], to wit: a Singer Sewing machine and Montgomery Ward Clock, by possessing property without the consent of Chester Parker [sic], with intent to deprive Chester Parker [sic], of the value and use thereof."

During the trial of this cause, one of the prosecution's witnesses, a burglar who allegedly sold the property to Cox, testified on direct examination that while in prison his life was threatened if he testified against Cox. We find such evidence was prejudicial error and we therefore reverse. We further find that on remand Cox is not entitled to a dismissal of the action, although he claims material exculpatory evidence consisting of a tape recording between Cox and a prosecution witness was destroyed by police.[1]

## FACTS

Cox does not challenge the sufficiency of the evidence to sustain his conviction, but generally contends the trial court committed prejudicial error in several rulings affecting the content of the evidence. We therefore direct our recitation of the facts to matters pertaining to these alleged errors rather than solely to the evidence supporting Cox's conviction.

On January 5, 1979 James Gordon and James Huddleston, a fifteen year old minor, burglarized the home of Gordon's grandfather, Chester Packer, removing an old Singer sewing machine and a Montgomery Ward wall clock. Gordon and Huddleston then went to the home of Cox and sold him both items for approximately $35 and a case of beer, after, according to their testimony, informing Cox the items were stolen. Cox wrote out a receipt for the items which Huddleston signed using the name "Bob Carter." Cox does not deny he purchased the items in question, but maintains he had no knowledge of their stolen character nor of the true names of Gordon and Huddleston at the time of the sale.

On January 18, 1979 Ken Wyant, Gordon's uncle and Packer's stepson, was wired by the Lafayette police with a concealed transmitter. Wyant went to Cox's home, explained that his nephew Gordon had sold Cox stolen property and requested the return of the sewing machine. Wyant told Cox he was only interested in the return of the sewing machine because it had sentimental value but did not want the clock back. Cox surrendered the machine refusing money Wyant offered and stating he had not known the items were stolen. After Wyant left, Cox moved the wall clock to his mother's house across the street. Upon obtaining a search warrant the police searched the Cox home and recovered the clock after Cox informed them of its loca-

---

1. In his motion to correct errors Cox raises three other issues for review, concerning the admission of photographs of his livingroom, refusal of a tendered final instruction on the possession of stolen property and the overruling of his motion to suppress stemming from a violation of the order for separation of witnesses. These errors are waived for failure to argue them in his brief. Rules of Procedure, Appellate Rule 8.3(A)(7).

tion. Cox was arrested and charged with theft.

The conversation between Wyant and Cox had been recorded on tape by the police, who listened to the conversation through a receiver in their patrol car parked down the street from Cox's residence. Due to police radio interference which rendered the recording inaudible, the police did not retain the tape.

During the month before Cox's arrest Gordon and Huddleston had committed several other burglaries in the area and testified they had sold many of the stolen items to Cox at his residence. On each occasion Gordon and Huddleston broke into unoccupied homes and businesses, removed various items, allegedly took them to Cox's home, and sold selected items to Cox for either cash, other merchandise, or a combination of both. According to their testimony, they usually notified Cox the items were stolen and indicated the location of the burglarized homes so Cox could dispose of the items in a different locale. Gordon and Huddleston specifically related the burglary of an A-frame house in Cutler, Indiana from which they removed various items including a small motorcycle. Huddleston sold the motorcycle to Cox and then threw it off a bridge into a river, allegedly at Cox's request after Cox had stripped it. They also admitted the theft of various tools from Carter's Block, Inc., a Logansport business establishment.

The testimony of Gordon and Huddleston was partially corroborated by the testimony of two of their burglary victims, Robert Kirpatrick and Lynn Bridge. Kirpatrick testified that several items had been taken from his A-frame home, including a small motorcycle which he identified through photographs admitted into evidence. Several photographs depicted a motorcycle in a muddied condition after its retrieval from beneath a bridge. Gordon's and Huddleston's testimony was also corroborated by Lynn Bridge, who detailed the burglary of her employer's business, Carter's Block, Inc.

On the other hand, Cox testified he had only met Gordon on one prior occasion, in mid-December of 1978, when he purchased some personal property from Gordon. Gordon verified that on this occasion he sold Cox tires which Gordon owned and which were not the fruits of any burglary. The evidence was uncontested that Cox, a resident of Lafayette, is married with two children and makes his livelihood principally by bartering with community residents and working on automobiles. He is also a member of a laborer's union.

Gordon and Huddleston were arrested in mid-January for two burglaries unrelated to the burglary of the Packer residence. Huddleston, a minor, was placed in a boy's home and, at the time of Cox's trial, he was scheduled to appear in court at a future date on the charges stemming from those unrelated burglaries. Gordon had already been sentenced to three years for one of these other break-ins and was serving his sentence at the Indiana Youth Center. Neither Gordon nor Huddleston had been charged at the time of Cox's trial for the burglary of Packer's residence. They testified, however, they had not been promised immunity in exchange for their testimony against Cox.

## I. *Threats Made Against Gordon*

Over Cox's objection on the grounds of relevancy and lack of foundation, the trial court allowed the prosecutor on direct-examination to elicit Gordon's testimony relating threats made against his life if he testified against Cox. The threats were made by unknown persons while Gordon was in prison at the Indiana Youth Center serving his sentence for burglary. Cox argues the proper evidentiary foundation was lacking, since the threats were not shown to have any connection with Cox. The State contends the specific mention of Cox's name in the threat provided a sufficient nexus. Moreover, the State cites *Barnes v. State*, (1978) 269 Ind. 76, 378 N.E.2d 839 for the general proposition that all evidence relating to threats and affecting the weight and credibility of a witness's testimony is admissible. We cannot agree with the State's contentions and in fact find

the improper admission of such highly prejudicial testimony was reversible error in this case since, among other things, the State failed to connect the *making* of such threats to Cox.

The testimony in dispute was elicited from Gordon, who was incarcerated at the Indiana Youth Center at the time of Cox's trial. On direct examination, the prosecution asked Gordon if he had been subject to threats regarding this case while in prison. Over objection by the defendant, the following testimony was admitted:

"Q  Okay. And what were those threats.

A  If you testified, don't mind coming back.

Q  Do you know the names of the people who told you that?

A  No.

Q  Okay. Did they—did they say anything else?

A  If—just if I testified, don't mind coming back, cause I wouldn't live long enough to be around long enough to live.

Q  Okay. Did they know who you were testifying against.

A  Yes.

Q  Who did they say? Did they mention a name?

A  Coy Cox. Coy Cox.

Q  Okay. But, you don't know the names of these people?

A  No, they're from Lafayette.

Q  What's been your reaction to that?

A  Scared.

Q  Okay. Have you told us at various times that you weren't going to testify?

A  This entered my mind.

Q  And you've told us that, haven't you?

A  Yes.

Q  And what did we say to you?

A  Nothing.

Q  Did we tell you you had a choice?

A  No."

There is no testimony in the record suggesting Cox was responsible for or had knowledge of these threats.

Cox had first sought to exclude Gordon's testimony on the threats through a motion in limine. In response, the trial court ruled: "[E]vidence of possible threats must be connected to the defendant *with the exception of witnesses confined in prison from the time of the alleged offense to [the trial date.]*" (Emphasis added.) We find no authority supporting such an exception. We can only speculate the trial court might have assumed the jury could evaluate the testimony as only representing some unwritten prison code among inmates which places in physical peril any inmate who acts as a prosecution witness. Viewed in this light the court may have additionally assumed the jury would consider the testimony as going only to the witness's credibility and not the defendant's guilt. We note, however, the jury was not instructed to so narrowly confine its consideration of the threats, and in view of the authorities discussed *infra*, we believe such an instruction could not have cured the error.

Generally, threats made against a witness by the defendant are in the nature of an attempt to manufacture or suppress evidence and are therefore viewed as an admission of guilt. *Keesier v. State*, (1900) 154 Ind. 242, 56 N.E. 232. "A threat is said to be at least an attempt to conceal evidence bearing upon a defendant's guilty knowledge. In the case of potential prosecuting witnesses it may also be regarded as an admission of guilt." *United States v. Flick*, (1975) 516 F.2d 489, *cert. denied* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260. Although such threats are not viewed as *conclusive* admissions, their relevance on the issue of guilt normally renders them proper for jury consideration. *Keesier v. State, supra*; *Keyser v. State*, (1974) 160 Ind.App. 566, 312 N.E.2d 922.

Since threats tend to show guilty knowledge or an admission of guilt on the part of the defendant, a proper foundation must be laid showing the threats were made either by the defendant or with his or her knowl-

edge or authorization. *Barnes v. State,* (1980) Ind.App., 403 N.E.2d 331; *see, Perfect v. State,* (1923) 197 Ind. 401, 141 N.E. 52 (attempt to procure witness's absence); *Adams v. State,* (1923) 194 Ind. 512, 141 N.E. 460 (attempt to remove witness from court's jurisdiction); *Eacock v. State,* (1907) 169 Ind. 488, 82 N.E. 1039 (attempt to procure absence of witness). As stated in 1 Wharton's Criminal Evidence § 217 (13th ed. C. Torcia 1972), "[a] threat by a third person against a public official or witness is relevant only if the defendant is linked in some way to the *making* of the threat." (Emphasis added.) *Id.* at 465. Thus, evidence of threats made by *unidentified* third persons usually lacks a sufficient connection to the defendant to render them admissible.[2] Barring such a showing, the highly prejudicial nature of such testimony requires its exclusion.

A factual situation where threats were not connected to the defendant was presented in *Keyser v. State, supra* when the prosecutor, during direct examination, elicited testimony of threats made against the witness by unidentified persons. Although allegedly offered only to support the witness's credibility the trial court ordered the testimony stricken and instructed the jury to disregard it. On appeal, however, this Court found the substantial prejudice resulting from the testimony required a new trial even given the court's instruction to disregard:

"[T]he desirability of . . . informing the jury in a criminal case [of all circumstances affecting a witnesses credibility] must be balanced against any prejudice to the defendant generated by such evidence. *Since a criminal defendant is the primary individual who could benefit from the bribing or absence of a witness who might testify against him, the inference is strong that he has procured these acts when evidence of them is introduced at his trial.* No evidence or testimony was presented, or attempted to be presented, to advise the jury of whether or not the defendant was involved in the

attempt. No connection between the defendant and the attempted bribe and threat was remotely shown.

We think that in this latter instance such evidence becomes so prejudicial to a defendant that no jury could be expected to apply it solely to the question of the credibility of the witness before it and not to the substantial prejudice of the defendant. For this reason, the testimony quoted above amounted to an 'evidential harpoon' thrust into the defendant herein. Cf: *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312.

It is apparent that the attempted removal of the resulting prejudice through an instruction to the jury was inadequate to expiate the effect of the testimony, when the testimony and the atmosphere created in the trial courtroom are examined in light of the criteria enunciated in *White v. State, supra,* as to the adequacy of jury admonishments in these situations. *This is especially true when the fact is considered that the State's entire case depended upon the testimony of the witness quoted above."* (Emphasis added.)

*Id.* 160 Ind.App. at 569, 312 N.E.2d at 924. Although the testimony in the instant case did not surprise the defendant since it had been ruled admissible after defendant's motion in limine, it "amounted" to an evidential harpoon due to the inability of an admonishment to alleviate the resulting prejudice. The trial court clearly erred in the admission of such testimony where there was no evidence Cox had knowledge of or had authorized the threats.

This is not to say that threats made against a witness are not admissible on *cross-examination* for impeachment purposes as tending to show interest or bias. For example, in *Barnes v. State,* (1980) Ind. App., 403 N.E.2d 331, where the defendant's mother visited the victim and asked her to drop the pending charges, we noted the mother's actions would normally not be admissible without a showing that the accused was "privy" to such advances, but held the

---

2. *See* Annot. 79 A.L.R.3d 1156 § 10 (1977).

trial court had not erred in admitting the evidence on *cross-examination* to impeach the mother's credibility. *Accord, Hardin v. State*, (1981) Ind., 414 N.E.2d 570. The testimony at issue here was not elicited on cross-examination, nor was it used for impeachment purposes.

We note the state relies on *Barnes v. State*, (1978) 269 Ind. 76, 378 N.E.2d 839, where the Court did not find error in the admission of testimony that a witness had been threatened regarding his decision to testify against the defendant. We first observe there is no indication in *Barnes* whether the threats were connected to the defendant. Furthermore, the Court did not address this substantive issue but found the defendant had waived it by failing to object to the testimony at trial and by failing to raise it in his Motion to Correct Errors. After thus disposing of the question, the Court cited *Adler v. State*, (1967) 248 Ind. 193, 225 N.E.2d 171, for the general proposition that all evidence relating to bribery, threats and other influences which affect the credibility of a witness should go before the jury. In *Adler*, the threats had been made by the prosecution, not the defendant, against a prosecution witness, and, although it is not expressly indicated who elicited this testimony, it is apparent that the defendant sought its admission in an attempt to impeach the witness's credibility after she had testified for the state. Furthermore, *Adler* relied on *Keesier v. State, supra*, where the threats had been made directly by the defendant. We therefore must conclude the dicta in *Barnes* does not stand for the principle that evidence of threats, unconnected to the defendant, can be elicited on direct examination. As demonstrated above, the admission of such testimony is error.

Furthermore, the improper admission of this testimony was not harmless error but resulted in substantial prejudice to Cox's rights. In determining whether the erroneous admission of evidence was harmless error, the question is not whether there is sufficient evidence to support the conviction absent the erroneously admitted evidence, but whether the improper evidence was likely to have a prejudicial impact on the jury, *Otto v. State*, (1980) Ind. App., 398 N.E.2d 716, thereby contributing to the verdict rendered. *Mitchell v. State*, (1972) 259 Ind. 418, 287 N.E.2d 860.

In the instant case, since Cox admitted the purchase of the items, the primary issue for jury resolution was whether Cox was aware of their stolen character. The testimony at trial on this issue among Cox and the two self-professed burglars who sold the items to Cox was conflicting. The latter two witnesses, Gordon and Huddleston, testified Cox had been told the property was stolen. On the other hand, the interest of Gordon and Huddleston was obvious considering they had not yet been charged for the burglary of the Packer residence. In addition, Cox denied the truthfulness of their testimony on this crucial issue by testifying he had no knowledge the items had been stolen. In all likelihood, Cox's conviction was therefore a product of the jury's determination of the credibility of these witnesses. Evidence of the threats not only decreased Cox's credibility but bolstered the credibility of Gordon's testimony. Under these circumstances, we cannot say the improper admission of such testimony did not contribute to the verdict rendered. We therefore find the admission of evidence of threats against the prosecution witness by unidentified third persons was prejudicial error requiring reversal and a new trial.[3]

3. Due to our disposition of this case, it is unnecessary to decide two other issues raised in the motion to correct errors and argued in Cox's brief. We will, however, comment on them briefly.

Cox's motion in limine also sought to exclude Gordon's and Huddleston's testimony regarding prior criminal activity among them, as well as testimony and photographs corroborating their testimony. The motion and later objections at trial were overruled.. Evidence of prior offenses is inadmissible to show the defendant's bad character. However, such evidence is admissible if it is relevant to some issue in the case, such as intent, motive, plan, identity or knowledge. *Schnee v. State*, (1970) 254 Ind. 661, 262 N.E.2d 186. We believe the prior activity between the witnesses and Cox, as

## II. *Destruction of the Tape Recording*

Although our decision on the admission of threats requires a reversal, we will address another issue which may arise on remand. Cox argues he was entitled to a dismissal of the charges since the police had destroyed the tape recording of a conversation between Wyant and Cox. The conversation had provided the probable cause for issuance of a search warrant for Cox's home. It appears, however, police radio interference masked the conversation on the recording, and consequently, after obtaining the deputy prosecutor's agreement, the police did not take steps to preserve the tape. Cox alleges the recording was exculpatory material evidence in that it revealed he told Wyant he didn't know the items were stolen and did not deny having the property. Cox therefore argues the suppression of this material evidence violated due process and the state bore a heavy burden to demonstrate the non-prejudicial nature of its destruction without defense counsel's permission. The State counters that Cox must show a substantial basis for claiming materiality by showing the evidence was capable of affecting the outcome of the trial. Pointing to Cox's admission in his brief that the tape was destroyed because of poor quality, and relying on witnesses who testified the only intelligible portion of the tape consisted of the words "sewing machine," the State contends Cox failed to prove materiality. Even assuming the tape was material evidence, we find Cox was not prejudiced by the tape's loss or destruction.

The negligent or intentional destruction or withholding of *material* evidence by either the police or the prosecutor may constitute a denial of due process presenting grounds for reversal. *Schutz v. State,* (1981) Ind., 413 N.E.2d 913; *Birkla v. State,* (1975) 263 Ind. 37, 323 N.E.2d 645, *cert. denied* 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77; *Ortez v. State,* (1975) 165 Ind.App. 678, 333 N.E.2d 838. The burden of proving materiality is on the defendant unless it is self-evident or unless such a showing is prevented by the destruction of the evidence itself. *Turpin v. State,* (1980) Ind., 400 N.E.2d 1119; *Hale v. State,* (1967) 248 Ind. 630, 230 N.E.2d 432. In such instances the burden is on the prosecution to demonstrate the evidence was not material and its destruction did not prejudice the defendant. *Birkla v. State, supra; Ortez v. State, supra.*

In the instant case, the record clearly demonstrates the tape was inaudible due to the failure of the police to disconnect or turn down the volume of the police radio which was located in the police car containing the recording device. The uncontradicted testimony by the police officers and Wyant indicated they had listened to the recording and could not understand anything but a few intermittent words. Additionally, Wyant, Cox, and Cox's wife (who

---

testified to by Gordon and Huddleston, were relevant to show Cox's knowledge of the stolen character of the items.

The second issue raised by Cox concerns the refusal of his tendered instruction which read:

"The jury is instructed that if it believes from the evidence that any person was induced to testify in this case by any promise of immunity from further punishment, or that any hope was held out or entertained by him that he would be rewarded or in any wise benefit if he implicated any of the defendants in the crimes charged herein, the jury *must* take such fact into consideration in determining what weight should be given to the testimony, closely scrutinize it and *unless they can reconvile [sic] it with truth, completely reject it.*" (Emphasis added.)

We believe *Moore v. State,* (1977) 267 Ind. 270, 369 N.E.2d 628 is dispositive of this issue. In *Moore,* a similar instruction was found to invade the province of the jury because of the mandatory nature of the language used. Additionally the Court found the instruction's substance was covered by the trial court's general instruction regarding the effect of a witness's interest in the result of the trial. We similarly find the mandatory language emphasized above invaded the jury's province and we also note the court's Instruction # 9 informed the jury that "[i]n determining whom you will believe, you may consider the nature of the evidence given by them, [and] their *interest, bias or prejudice,* if any disclosed, . . . ." As in *Moore,* the substance of the refused instruction was covered by the court's general instruction. Therefore, the refusal to instruct as requested does not appear to have been erroneous.

was the only other individual present during the conversation) all agreed regarding the contents of the conversation. All three witnesses testified that Cox had not disclaimed possession of the stolen items when confronted by Wyant, and Cox had in fact told Wyant he had no knowledge that the items were stolen property.

Analagous situations were presented in two recent Indiana Supreme Court cases. In *Stevens v. State*, (1978) 267 Ind. 541, 372 N.E.2d 165, a defendant charged with murder sought a dismissal due to the prosecution's suppression of a tape recording of his *Miranda* rights, claiming the tape was material and exculpatory in that it would show he was too intoxicated at the time of the murder to form the requisite intent. The record revealed the tape was garbled due to a malfunction of the recorder. Since there was other substantial evidence in the record supporting the defendant's intoxication defense, the Supreme Court held the tape would have been merely cumulative even assuming its utility to the defense and therefore the Court concluded the defendant had not demonstrated reversible error. Similarly in *Turpin v. State, supra,* the defendant alleged the loss of an exculpatory statement made by him to the police violated his right to due process. The Supreme Court held the loss was not prejudicial since a police officer testified to the tape's contents. We are similarly persuaded that the tape, if it was in fact audible, would have been merely cumulative and its loss did not prejudice Cox's rights.

Reversed and remanded for a new trial.

YOUNG, P. J., and CHIPMAN, J., concur.