**STATE of Minnesota, Respondent,**

v.

**James WILFORD, Appellant.**

**No. C5–86–685.**

Supreme Court of Minnesota.

July 10, 1987.

C. Paul Jones, Minn. State Public Defender, Jonathon G. Steinberg, Asst. Minnesota State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

WAHL, Justice.

James Wilford was found guilty by a jury of murder in the first degree with premeditation (Minn.Stat. § 609.185(1) (1984)) and murder in the first degree while committing or attempting to commit burglary (Minn.Stat. § 609.185(3) (1984)) in connection with the death by strangulation of 69–year-old Gertrude Renckens. He was sentenced to life imprisonment for pre-

meditated murder. He appeals the conviction. We affirm.

Gertrude Renckens was found dead of manual strangulation in her bed at her home in Robbinsdale, about 9 a.m. on September 19, 1985, her hands bound with tape, her feet bound with a pillowcase. The medical examiner placed the time of her death between 10:30 p.m. on September 18 and 2:30 a.m. on September 19, 1985.

Police staked out branches of the Citizens State Bank after two calls to the bank in the middle of the day on September 19 regarding the status of Renckens' checking account balance. James Wilford and Eugene Haywood were arrested at the drive-through at the Citizens State Bank in Robbinsdale at 5:35 p.m. on September 19 as they attempted to cash one of Gertrude Renckens' checks made payable to Haywood for $300.

The two were driving Wilford's wife's car. On the front seat of the car, police found Renckens' checkbook and an identification card. In Wilford's pants pockets they found Renckens' driver license and a pair of green surgical-type rubber gloves.

The state at trial introduced scientific evidence that the rubber glove fragments found in Renckens' bedroom were indistinguishable from the material in the gloves seized from Wilford at the time of his arrest and with gloves from Wilford's wife's doctor's office where Wilford and his wife spent half an hour on September 17 in the vicinity of a box of rubber gloves. Wilford's wife testified that Wilford took one pair of gloves from the box of 100. The state introduced further scientific evidence that hairs found on Renckens' body and bedclothes were compatible with Wilford's hair; they were not compatible with the hair of Haywood, the other person arrested. Other scientific evidence established that the screwdriver found in Wilford's apartment matched the pry marks on window and garage service door areas of Renckens' home in that the paint smears on the screwdriver matched the paint, and a nick and other irregularities of the screwdriver blade matched the pry marks.

Two issues are raised on appeal:

1. Did the trial court abuse its discretion in excluding evidence of the details of the prior felony convictions of two of the state's witnesses?

2. Was the defendant denied a fair trial because of prosecutorial misconduct and because of remarks made in the presence of jurors outside the courtroom?

1. The defendant sought to inquire of state's witnesses Willie Loyd and Stanley Loyd as to the facts underlying their prior felony convictions. It was the strategy of the defense to raise a reasonable doubt as to whether the Loyds, whose convictions involved robberies and assaults of older persons in their homes, or the defendant had committed the crime charged. The state moved to prevent exploration of those factual details. The trial court permitted introduction of the fact of each conviction, with the date and charge, as well as extensive cross-examination on the whereabouts of the two Loyds at the time the murder was committed. The court, however, refused to admit evidence of the factual details underlying the prior convictions on the ground that there was not a proper foundation connecting the Loyds with the crime. We are asked to determine if this ruling was an abuse of discretion. We hold that it was not.

Evidence tending to show that a given crime was committed by another person is admissible if a proper foundation is laid connecting the person with the actual commission of the crime. *State v. Hawkins*, 260 N.W.2d 150, 158–59 (Minn.1977). Otherwise, the rule is to avoid the consideration of matters collateral to the crime. *Id.* In *Hawkins*, the testimony of the state's witness himself connected that person to the crime and satisfied the requisite foundation. In the case before us, there is no such evidence. There was only testimony that the defendant went to the Loyds after the murder for help in passing checks and that one of the Loyds took an active role in attempts to pass the checks. There is no evidence linking either of the Loyds to the actual commission of the homicide, whereas scientific evidence linked the defendant to

fragments of rubber gloves found on the scene, to hairs found on the body of the victim, and to the pry marks on the window at the point of entry in the victim's house. The rules of evidence cited by the defendant are an inadequate basis for admitting the factual details underlying the felony convictions of the two state's witnesses, absent a nexus between the perpetrators of those felonies and the crime involved in this case. We hold that the trial court properly ruled to exclude the underlying details of the Loyds' prior convictions.

2. The defendant next argues that he was denied a fair trial because the prosecutor elicited irrelevant and prejudicial testimony and because the jury was exposed to extraneous and prejudicial information outside the courtroom. First, the defendant argues that the prosecutor implied that there was a threat to a witness's life by the defendant or at his direction. The prosecutor asked, during the redirect examination of a witness, "And there is a problem now where you are going to go as a result of testifying. You can't be returned to Stillwater, isn't that correct?" and, "And I have told you that so your life won't be endangered, you can be transferred to another facility. I told you I would assist you in that?" At the end of redirect and recross-examination, the defense asked the court to strike the comment about the witness's life being in danger but the motion was denied. When court reconvened the following Monday morning the defense renewed its objection and moved for a mistrial, or alternatively for a curative instruction, saying that the question implied a threat against the witness by the defendant and that it lacked a factual basis. The trial judge denied the motion for a mistrial but instructed the jury that there had been no threats by the defendant and that fear for the witness's safety was based on prison culture. We find no error.

■ The decision about whether a new trial should be granted because of prosecutorial misconduct lies in the discretion of the trial court and will not be reversed unless the misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that the defendant's right to a fair trial has been denied. *State v. Wahlberg*, 296 N.W.2d 408, 420 (Minn.1980). The court looks at whether the misconduct is likely to have played a substantial role in influencing the jury to convict. *State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974). Here the questions were not deliberately prejudicial. They were brief, isolated, not repeated, and were unlikely to have a substantial impact on the jury. *See State v. Caldwell*, 322 N.W.2d 574, 590 n. 16 (Minn. 1982). Furthermore, a curative instruction suggested by the defense, including a clarifying explanation, was given. *Id.* at 590.

■ The defendant also contends that the prosecution improperly shifted the burden of proof to the defense. The prosecutor asked an expert witness from the Bureau of Criminal Apprehension, "In your experience have you received contacts from attorneys on both sides to discuss your findings and your test results?" and, "And have you had occasion where opposing counsel would like to have independent analysis done of the items that you have been involved in?" The defendant objected that the questions came close to suggesting that the defendant had a burden of proof to do independent studies or to check the state's evidence, and that one more question would prompt a motion for mistrial. The trial judge struck the last question and answer from the record and directed the jury to disregard them.

It is true that prosecutorial comment on a defendant's failure to call a witness is disapproved because it might suggest that the defendant has some burden of proof or that the defendant did not call the witness because he or she knew the testimony would be unfavorable. *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). However, these questions were innocuous. *See State v. Tungland*, 281 N.W.2d 646, 651 (Minn.1979). The defendant asked for and got a curative instruction. *State v. Caldwell*, 322 N.W.2d at 590. The jury was properly instructed on the state's burden of proof and the defendant's lack of

burden to prove himself innocent. *State v. Race*, 383 N.W.2d 656, 664 (Minn.1986).

■ The third prong of defendant's fair trial issue concerns remarks made in the presence of jurors outside the courtroom. Near the end of the trial, two men were talking in an elevator in the presence of two jurors. The defendant's name was mentioned and one said, "It doesn't look too good for the guy." The bailiff immediately stopped the conversation. The person who had made the comment reported the incident to defense counsel the next morning. The trial judge questioned the two jurors pursuant to Minn.R.Crim.P. 26.-03, subd. 9, in the presence of counsel with a verbatim record, about the potential prejudice of this conversation. He cautioned them to keep an open mind and commented that spectators often had not heard all the evidence.

The proper procedure when there have been improper outside influences is "to determine from juror testimony what outside influences were improperly brought to bear upon the jury and then estimate their probable effect on a hypothetical average jury." *State v. Cox*, 322 N.W.2d 555, 559 (Minn. 1982). The relevant factors to be considered by this court, in an independent evaluation of the verdict, are "the nature and source of the prejudicial matter, the number of jurors exposed to the influence, the weight of evidence properly before the jury, and the likelihood that curative measures were effective in reducing the prejudice." *Id.* Here the remark was made by an observer, not by an officer of the court, which could carry more weight with jurors. *Id.* at 558. The remark was an opinion, not strongly expressed. Only two jurors were involved, and there is no indication that the other jurors knew what had been said. The court's questions and instructions emphasized the desirability of not being influenced by the incident, and pointed out that the jurors had more information than the spectator. The evidence at trial clearly tied the defendant to the homicide. Review of the record indicates no likelihood of prejudice. The defendant was afforded a fair trial. We affirm the conviction.

Affirmed.