COMMONWEALTH *vs.* EVANS AUGUSTE.

Suffolk. May 4, 1994. - September 12, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Fair trial. *Practice, Criminal*, Fair trial, Witness, Capital case. *Identification.*

The judge at a murder trial properly, within his discretion, allowed questions, and answers, of two witnesses with respect to their fear of testifying and of talking to the police where such questions were relevant, where the prosecutor did not argue that the defendant made threats to those witnesses, and where the judge properly instructed the jury that evidence of the witnesses' fear had no bearing on the defendant's guilt or innocence. [646-648]

No reason appeared on the record of a first degree murder trial for this court to exercise its power under G. L. c. 278, § 33E, to order a new trial or reduce the verdict. [648]

INDICTMENTS found and returned in the Superior Court Department on February 21, 1991.

The cases were tried before *Peter M. Lauriat*, J.

*William M. White, Jr.*, for the defendant.

*Vincent R. McDonough*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. In August, 1991, after a trial in Suffolk County before a judge and jury, the defendant was convicted of murder in the first degree and of unlawful possession of a firearm. The defendant's appeal is before us pursuant to G. L. c. 278, § 33E (1992 ed.).[1] The defendant asserts that he was denied his right to a fair trial because testimonial evidence introduced by the prosecutor suggested that certain witnesses were fearful of testifying. The defendant also re-

---

[1]The defendant makes no separate argument challenging his conviction of unlawful possession of a firearm.

quests that we exercise our extraordinary power under G. L. c. 278, § 33E. We affirm.

On the evidence presented, the jury could have found the following facts. Sometime in the afternoon or early evening of October 16, 1990, Angela Cawley and Nicole Johnson encountered the victim, Dana Cox, near an ice cream parlor at the corner of Evelyn Street and Blue Hill Avenue in the Mattapan section of Boston. The three conversed for several minutes and then the girls[2] hailed a taxicab for Cox, who got into the taxicab and left the area.

Later that evening, Cawley and Johnson returned to the corner of Evelyn Street and Blue Hill Avenue. Cox again was present near the ice cream parlor. Soon after arriving, Cawley went into the T & C Variety store, located on Blue Hill Avenue, across Evelyn Street from the ice cream parlor. Cawley used the pay telephone. She then made a purchase in the T & C Variety store and left the store. She crossed Evelyn Street to the corner near the ice cream parlor where Cox was standing. Meanwhile, Johnson had gone into the L & A Market, a short distance away from the ice cream parlor. Cawley spoke briefly to Cox, then walked to the L & A Market to ask Johnson if she was ready to go home. In the L & A Market, Cawley saw a man, later identified as the defendant, using the public telephone. After Cawley spoke to Johnson, she went back to the corner where Cox was standing. Johnson selected an item to purchase and brought it to the cashier. She was acquainted with the cashier and so she conversed with him for a short time. While talking to the cashier, she also noticed a man, later identified as the defendant, using the public telephone. After the defendant finished using the telephone, he left the L & A Market, walking toward the ice cream parlor. Johnson was able to watch the defendant as he left the store and walked away. Shortly thereafter, Johnson left the L & A Market and called to Cawley, who was standing close to Cox on the corner.

---

[2]Cawley was sixteen years of age at the time of the trial; Johnson was fifteen years old.

At about this time, an automobile occupied by Andre Givens, another man, and their girl friends arrived on the scene. The vehicle pulled over on Evelyn Street near the ice cream parlor where Cox was standing. Cox went over to the automobile and spoke to Givens. One Richard Pryce then happened on the scene and approached the automobile.[3] Cox moved away a few steps to allow Pryce to speak to Givens and his companions.

With Cawley standing close by and Johnson approaching from the L & A Market, the defendant walked up to Cox,[4] said something to him and shot him six times, continuing to shoot as Cox fell to the ground. The defendant grinned at Cawley and ran past the L & A Market toward Fessenden Street. When she saw the defendant shooting Cox, Johnson ran back into the L & A Market. Both girls momentarily were frozen with shock and fear because of what they had witnessed.

Givens and his companions attempted to move Cox into the automobile so that they could transport him to the hospital, but an off-duty Boston police officer who came on the scene told them to wait for an ambulance. This officer saw someone running toward Fessenden Street, but he was unable positively to identify the defendant as the runner. Cox was transported to Boston City Hospital where he died from the gunshot wounds.

Some time later, Cawley and Johnson saw the defendant on Wellington Hill Street in Mattapan. The defendant looked at the two girls, and the girls observed that the defendant was wearing the same clothes that he had worn on the night of the shooting.

About one month after the shooting, two Boston police officers were outside a house where a party was being held. They observed three males leave the house, draw handguns,

---

[3]Andre Givens testified that earlier that evening he had seen Richard Pryce and the defendant together.

[4]Cawley testified that, from where she was standing on the corner near the ice cream parlor, she saw the defendant exit the L & A Market and walk over to Cox.

fire and discharge bullets randomly into the air. When they saw the police officers, the men fled. The officers apprehended two of the men. Richard Pryce was one of them. The officers recovered handguns from the separate paths that the three men had taken when they fled. The handgun recovered from the path taken by the man who was not apprehended later was determined to be the murder weapon.[5]

At trial, Cawley and Johnson positively identified the defendant as the murderer of Dana Cox. Givens testified that he did not see the murderer's face at the time of the shooting, but he did identify the defendant in a photograph taken near the scene of the murder shortly after the incident occurred.[6] The jury convicted the defendant of deliberately premeditated murder in the first degree and of the unlawful possession of a firearm.

1. *Denial of fair trial.* The defendant claims he was denied a fair trial by the erroneous admission of testimony of several witnesses regarding their fear of testifying in court and their fear on the night of the murder which prevented them from talking to the police. The defendant asserts that the judge should have granted his motion for mistrial based on his Massachusetts and Federal constitutional rights to a fair trial.

During trial, Cawley admitted that, on the night of the shooting, she did not tell the police all she had observed. She stated she failed to do so because she was scared. Similarly, Johnson testified that she did not speak to police officers on the night of the shooting because she was afraid that the shooter was still in the area and might see her talking to the police. She also testified that she presently was scared while she was testifying, and that she had suffered and continued

---

[5]Some time after the murder of Cox, the same officer who participated in the arrests of the two shooters outside the house party responded to a reported motor vehicle accident in which Pryce was the driver of one of the automobiles. The defendant was a passenger in Pryce's automobile at the time of the accident.

[6]Givens identified the defendant based on the pants that the defendant was wearing in the photograph.

to suffer nightmares after the event. Givens testified that he did not want to be involved in the case because he was afraid for his own and his family's safety, and that, likewise, his girl friend who was present that night was afraid to be involved. Givens also testified that the other man who was in the automobile with Givens when Cox was shot had recently been shot several times. Finally, the prosecutor asked Givens if he had telephoned the police anonymously to reveal the names of two suspects in this case, and Givens responded in the negative.[7]

In his instructions to the jury, the trial judge charged that, "[i]n this case, there is no evidence direct or indirect that the defendant . . . intimidated anyone in connection with this case. The fact that one or more witnesses who have appeared may have expressed some fear or some concern about testifying in this case has no bearing on this defendant's guilt or innocence of these charges."

Generally, questions regarding a witness's fear of testifying, whether caused by the defendant or not, are allowable in the judge's discretion. *Commonwealth* v. *Breese*, 381 Mass. 13, 16-17 (1980). *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 412 (1978). *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975). See *Commonwealth* v. *Andrews*, 403 Mass. 441, 450 (1988). See also *Commonwealth* v. *Jenkins*, 34 Mass. App. Ct. 135, 145-146 (1993).

The questions put to Cawley and Johnson were relevant to explain why the two had not spoken candidly to the police on the night of the incident. As for Givens, the questions were relevant to the prosecutor's argument that Givens was a hostile or unwilling witness and to explain Givens' hesitancy in giving information about what he saw that evening. See *Breese, supra* at 17. Questions regarding Givens' girl friend's failure to testify were relevant because the defendant may

---

[7]After defense counsel objected and moved to strike this question and answer, the judge struck the question and answer and then instructed the jury to disregard both. The judge also reminded the jury that answers to questions, and not questions themselves, may be considered as evidence by the jury.

have been entitled to a "missing witness" instruction if he had requested one. See *Commonwealth* v. *Anderson*, 411 Mass. 279, 282-283 (1991).

The prosecutor did not argue that the defendant had made threats to these witnesses. See *Fitzgerald, supra* at 415. In addition, the judge properly instructed the jury that evidence of the witnesses' fear had no bearing on the defendant's guilt or innocence. See *Andrews, supra* at 450. We conclude that there was no abuse of discretion in allowing these questions and answers.[8]

2. *General Laws c. 278, § 33E.* The defendant argues that we should grant relief under G. L. c. 278, § 33E, because the identification evidence in this case was weak and because of the introduction of evidence of the witnesses' fear. We have found no error in the introduction of the evidence of the witnesses' fear, and we cannot characterize the identification evidence as weak. Cawley and Johnson both described the opportunities they had to view the defendant before, during, and after the shooting. Their testimony regarding their identifications of the defendant was unequivocal and was not discredited effectively by cross-examination.

We have reviewed independently the entire record before us as is our duty under G. L. c. 278, § 33E. We find no reason to order a new trial or to reduce the verdict of murder in the first degree in this case pursuant to that section.

*Judgments affirmed.*

---

[8]Since we conclude that there was no error in admitting this testimony, we need not discuss what standard of review should be applied to the asserted errors in light of the Commonwealth's claim that defense counsel failed to object to many of the questions discussed.