**Scottie ADAMS, Appellant,**

v.

**State of INDIANA, Appellee.**

No. 71S03–0809–CR–514.

Supreme Court of Indiana.

Feb. 26, 2009.

*PUBLISHED ORDER VACATING PRIOR ORDER GRANTING TRANSFER*

By order dated September 23, 2008, the Court granted a petition seeking transfer of jurisdiction over this appeal from the Court of Appeals to this Court. After further review, including oral argument, a majority of the Court has determined that transfer was improvidently granted.

Accordingly, the order granting transfer is VACATED. The Court of Appeals opinion reported as *Adams v. State,* 890 N.E.2d 770 (Ind.Ct.App.2008), is no longer vacated under Appellate Rule 58(A) and is REINSTATED as Court of Appeals precedent. The transfer petition filed by Appellant Adams is DENIED.

Pursuant to Appellate Rule 58(B), this appeal is at an end. The Court DIRECTS the Clerk to certify the appeal as final and to send copies of this order to the Hon. John M. Marnocha, Judge, St. Joseph Superior Court; the Hon. John G. Baker, Chief Judge, Indiana Court of Appeals; Steve Lancaster, Court of Appeals Administrator; Danielle Sheff, Court of Appeals Administration Office; and all counsel of record.

The Court further DIRECTS the Clerk to send a copy of this Order to LexisNexis and to Thomson/West for publication online and in the bound volumes of this Court's decisions.

SHEPARD, C.J., and DICKSON, and RUCKER, JJ., concur.

BOEHM, J., dissents from the denial of transfer with opinion, in which SULLIVAN, J., concurs.

BOEHM, Justice, dissenting from the denial of transfer.

I respectfully dissent from this Court's denial of transfer because I believe the case presents an important issue that should be addressed.

This case arose from a physical altercation between Adams and several others, including Christopher White and Dominique Nance. After White evidently insulted Adams on a sidewalk, Adams struck White and knocked him to the ground. White called to his nephew Timothy White, who was with a group of friends and relatives at a nearby house, and Timothy, Nance, and three others ran down the street to where Adams stood. Nance approached Adams first and hit him in the face. Adams stumbled back, and at some point during the confrontation, Adams fatally shot Nance.

Adams would later tell police that "all these kids and people coming up, there was like a bunch of people out there just started attacking me. You know, hitting me in the head, and I fell. And then somebody began to kick me, you know, and then I feared for my life." Adams also said that "somebody must have dropped a gun or something, I don't know where it came from, but somebody dropped it, I grabbed it and I just covered up while I was shooting, pow, you know, and I just kept running . . . ."

Adams was charged with murder and firearm-related offenses. Shortly after Christopher White took the stand as a witness for the State in Adams's trial, White spontaneously stated, "Can I say something before we start? I don't want

to testify, because I'm afraid for my kids['] life and I'm afraid for my life. So I don't want to testify against nobody.... I'm afraid for my family's life[.]"

The trial court called a recess, excused the jury, and proceeded to question White, who at the time was incarcerated for dealing drugs. White's counsel stated that White had been "jumped in the jail over this incident by people who were in custody." White told the court that he felt as though he and his family were "in jeopardy." However, White did not provide any basis to conclude that Adams was responsible for what happened to him in jail or that Adams had otherwise threatened him for his participation in the trial. Nor did the State offer any evidence tying Adams to White's perceived threats.

After White refused to testify any further and was held in contempt, Adams moved for a mistrial. The trial court denied the motion, reseated the jury, and gave the following instruction:

Before we took the break Mr. Christopher White was testifying. He made some statements which were not in response to any question that was asked of him.

I have dealt with that issue and things related to it, in your absence.

Mr. White is not testifying, as you can see that he's not there on the witness stand.

But I have to tell you that the statements Mr. White made about his wanting to or not wanting to testify, I'm advising you that you may not and cannot, consider those statements in any way as evidence in this case, or consider that in any way in reaching a verdict in this case.

Does everyone understand?

The jurors responded affirmatively. The trial court also asked, "Are there any of you who think that you could not disregard what Mr. White had to say, and that would influence your ability to be a fair and impartial juror in this case?" The record reflects that no hands were raised.

The trial continued and the State called its remaining witnesses. Adams claimed he acted in self-defense at the time of the shooting. Adams also contended that he had not been carrying a firearm and had discovered the gun in the street during the scuffle. Following roughly two days of testimony, the jury acquitted Adams of murder but found him guilty of voluntary manslaughter and carrying a handgun without a license.

Adams appealed, arguing that the trial court erred by denying his motion for a mistrial. The Court of Appeals affirmed. *Adams v. State*, 890 N.E.2d 770, 777 (Ind. Ct.App.2008). The court reviewed Indiana precedent and determined that "the admonishment to the jurors, coupled with the jurors' acknowledgment to the trial court that they could disregard White's comments in reaching a verdict, sufficiently removed any prejudice that might have inured to Adams." *Id.* Judge Riley dissented, finding that the trial court's instruction was "inadequate to expiate the effect of the testimony," that the trial court subsequently erred by denying Adams's motion for a mistrial, and that the error was not harmless as to either of Adams's convictions. *Id.* at 778–79 (quoting *Keyser v. State*, 160 Ind.App. 566, 569, 312 N.E.2d 922, 924 (1974)). Adams petitioned for transfer, which this Court denies today.

Threats made by the defendant against witnesses as attempts to conceal or suppress evidence are admissible as bearing upon knowledge of guilt. *Bassett v. State*, 895 N.E.2d 1201, 1211 (Ind.2008). But before threat testimony is proper for the jury's consideration, a foundation must be

laid showing the threats in question were made either by the defendant or with the defendant's knowledge or authorization. *Cox v. State*, 422 N.E.2d 357, 361–62 (Ind. Ct.App.1981). This foundation is necessary because "a criminal defendant is the primary individual who could benefit from the bribing or absence of a witness who might testify against him," and "the inference is strong that he has procured these acts when evidence of them is introduced at his trial." *Keyser*, 160 Ind.App. at 569, 312 N.E.2d at 924.

There was no evidence in this case linking Adams to White's jailhouse incident or to White's general fear of being harmed. Accordingly, White's remarks constituted inadmissible threat testimony and were not appropriate for the jury's consideration. The issue is whether the trial court's admonition satisfactorily addressed the prejudicial impact of White's testimony, or whether Adams was entitled to a mistrial.

Indiana courts have expressed doubt that curative instructions are ever sufficient to eliminate prejudice in cases like this one. *See Scifres–Martin v. State*, 635 N.E.2d 218, 220 (Ind.Ct.App.1994); *Cox*, 422 N.E.2d at 361–62; *Keyser*, 160 Ind. App. at 568–69, 312 N.E.2d at 924; *Dudley v. Duckworth*, 854 F.2d 967, 970 (7th Cir. 1988). In *Scifres–Martin*, for example, the Court of Appeals observed that evidence of obstruction or suppression is "so prejudicial that no jury can be expected to apply it solely to the question of the credibility of the witness, and not to the guilt of the defendant, and therefore, a trial court's admonishment to the jury or curative instruction will not serve to remove the resulting prejudice." 635 N.E.2d at 220 (citing *Keyser*, 160 Ind.App. at 569, 312 N.E.2d at 924).

It may be that a jury instruction can "unring the bell" and neutralize the effects of improper threat testimony in some cases. But for an admonition to be sufficient under circumstances such as in this case, it must be more persuasive than a simple directive to disregard this very loudly rung bell. Here the trial court asked the jury to ignore White's statements, but did not explain why they were to disregard the testimony. It consequently left jurors to draw the inference that the defendant was behind the threats. A more meaningful admonition would have made clear to the jury that (1) the court had looked into the matter, (2) there was no evidence that Adams had threatened White, and (3) there are many possible explanations for White's concerns that have nothing to do with the defendant. *See People v. Rivera*, 160 A.D.2d 267, 553 N.Y.S.2d 707, 710–11 (N.Y.App.Div.1990) (trial court "erred by failing to caution the jury not to speculate whether defendant had made the threats and not to construe the threats as evidence of defendant's guilt"; court's failure "resulted in an implicit invitation to the jury to speculate that defendant made, or was responsible for, the alleged threats [the witness] received"); *cf. United States v. Vaulin*, 132 F.3d 898, 900 (3d Cir.1997) (where witness's testimony falsely implied that death threats came from the defendants, trial court instructed jury that the defendants "had nothing whatsoever to do with·any threats that this [witness] may have received"); *Commonwealth v. Auguste*, 418 Mass. 643, 639 N.E.2d 388, 390 (1994) (trial court instructed jury that "there is no evidence direct or indirect that the defendant ... intimidated anyone in connection with this case. The fact that one or more witnesses who have appeared may have expressed some fear or some concern about testifying in this case has no bearing on this defendant's guilt or innocence of these charges"); *Sawyer v. State*, 634 A.2d 377, 379 (Del.1993) (trial court instructed

jury that "a few minutes ago you heard testimony from [a State's witness], that she said she did not want to be here ... and that she was upset because she was afraid for herself and for her children. While you were waiting in the jury room, it was developed that there have been no threats whatsoever made against her by [the defendant], by [the defendant's associate], or by any member of their family or families. It was developed that basically her feeling of apprehension was a product of her own mind.... If you came to any conclusion that there were any threats made by this defendant, none were made, and you should simply strike that impression from your mind...."); *State v. Wilford,* 408 N.W.2d 577, 580 (Minn.1987) (trial court instructed jury that there had been no threats made by the defendant and that fear for the witness's safety was based on prison culture); *People v. Yeats,* 150 Cal.App.3d 983, 198 Cal.Rptr. 268, 270 (1984) (trial court admonished jury that there was no evidence that the defendant had caused the alleged threat to a witness).

This was a close case on its facts. Adams was outnumbered and had been attacked by one of his antagonists. As Judge Riley points out in her dissenting opinion, the jury in this case was given instructions both on voluntary manslaughter and on self-defense. Ultimately, Adams's defense turned on whether he had a "reasonable belief that deadly force was necessary to prevent serious bodily injury." *Taylor v. State,* 710 N.E.2d 921, 924 (Ind.1999); *cf.* Ind.Code § 35–41–3–2(a) (2004). The jury's verdict may very well have been influenced by White's outburst and the natural credibility or character inferences it could suggest.

Given the apparent closeness of this case, it is at least debatable whether the procedure followed by the trial court was harmless error. But since transfer has been denied, that issue is moot and I do not need to address it. I write separately to express my view that once it was clear that no evidence associated Adams with White's concerns, if no mistrial was ordered, the trial court should at least have given more than a generic and conclusory instruction to disregard White's testimony.

For the foregoing reasons, I dissent from the order of this Court denying transfer.

SULLIVAN, J., concurs.