Johnnie L. STANLEY, Ramon T. Rodriguez, Appellants (Defendants Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1–681A188.

Court of Appeals of Indiana, First District.

May 18, 1982.

Daniel R. Marra, Charles G. Read, Jeffersonville, for appellants.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Johnnie L. Stanley and Ramon T. Rodriguez appeal their convictions for robbery, a class B felony, at a trial by jury. We affirm.

Stanley and Rodriguez raise the following issues for our review: 1) did the trial court err by denying their motion to dismiss made on the grounds that the State failed to comply with the trial court's discovery order; 2) did the trial court err by allowing

the State to introduce photographs of money and a cash register drawer taken during the robbery because the State failed to comply with Ind.Code 35–1–6–5; 3) did the State fail to show a proper chain of custody for the introduction of a knife and was the knife relevant because there was no direct evidence showing that it was used in the robbery; 4) did the trial court err by failing to give defendant's tendered instructions numbered 3 and 5, which dealt with the State's burden of proof, the presumption of innocence, and eyewitness identification, and did the trial court err by modifying defendants' instruction numbered 4, to delete language referring to wholly circumstantial evidence; 5) was the evidence sufficient to support the verdicts; and 6) were the defendants' sentences excessive and was it unconstitutional to impose a fine because of their indigency.

Additionally, there are separate issues raised by each defendant before us. Rodriguez argues the trial court erred by denying his motions for a separate trial and for a mistrial. The motions were made on the grounds that he was denied effective cross-examination of Stanley because his counsel originally represented both defendants and was barred from effective cross-examination by the attorney-client privilege. Rodriguez also alleges evidence pertaining to a threatening telephone conversation, which he made to an eyewitness to the robbery, was improperly admitted because it was irrelevant.

Stanley also argues his motions for a separate trial and for a mistrial were improperly denied. Stanley's motions were based on the theory that he was denied the right to call his co-defendant, Rodriguez, as a witness on his behalf and that the attorney-client privilege was violated by his cross-examination by his original counsel.

The evidence favorable to the State reveals that Stanley and Rodriguez were in a Convenient Food Mart in Jeffersonville, Indiana, on March 22, 1980 at approximately 8:15 P.M. They approached the cashier, each with a soft drink in hand. Stanley paid for his drink and moved away from the counter. Rodriguez drew a knife and said "I'll pay for it with this." Then he went behind the counter, pushed the clerk to the floor, and removed the cash register's black money tray. He said to the clerk, "If you call the police I'll come back and kill you."

While these events were occurring a stockboy, Delbert Baker, heard the cashier scream for him and looked up to see Stanley. Stanley pushed Baker back and said, "Stay back and you won't get hurt." Next, Baker heard someone say, "Let's go", and Stanley left.

During the robbery, a customer, Delores Wheeler, was standing near the check-out counter and observed the events. She recognized the knife wielding robber as Rodriguez, whom she had known for approximately five years.

The cashier called the police and as they approached the store, they saw the defendants in a parking lot within a block of the store. Stanley was carrying the cash drawer and Rodriguez was carrying a soft drink. As the officers approached, Stanley dropped the money drawer on the ground. The officers found small change strewn about the area near the cash drawer.

The officers arrested the defendants and during the pat down search for weapons, they found a knife in Stanley's pocket. A more extensive search at the police station revealed that Rodriguez had $95.54 on his person and Stanley $59.33. On Rodriguez, the police also found a produce receipt made out to Convenient Food Mart # 117 and dated March 19, 1980. On both defendants, a majority of the money found was in change. Both defendants also had quantities of food stamps.

The defendants were arraigned and counsel, Charles G. Read, was appointed on March 31, 1980. On August 12, 1980, Read moved to have additional counsel appointed because of potential conflicts of interest between the defendants. Daniel R. Marra was appointed to represent Stanley on November 3, 1980.

Approximately one month after the robbery, Delores Wheeler received a telephone

call and recognized the caller as Rodriguez by his voice. Rodriguez asked Wheeler if she was the person who had identified him to the police. Wheeler responded that she wasn't and Rodriguez said, "Well if you are I'm gonna get you and your family."

■ Turning to the defendants' first joint issue, we find no error in the trial court's denial of their motion to dismiss based upon the State's failure to comply with a discovery order. Stanley and Rodriguez argue the State failed to provide them with photographs of the robbery, taken by a security camera in the store. In its response to this motion, the State explained that the security camera was not functioning during the robbery and therefore, the photographs were unavailable. Apparently, the prosecutor originally thought such photographs would be available. No photographs depicting the robbery in progress were utilized by the State. Therefore, we find no violation of the trial court's discovery order and no error in denying the motion to dismiss.

Next, Stanley and Rodriguez allege the trial court erred by allowing the State to introduce photographs of the cash drawer and the money recovered when they were arrested. At trial, they objected to the introduction of this evidence arguing that the State had failed to comply with Ind. Code 35–1–6–5.1[1] which states in relevant part:

(b) Evidence that consists of property obtained unlawfully from its owner may be · returned by the law enforcement agency to the owner before trial, in accordance with IC 35–43–4–4(h), if that property may be lawfully possessed by the owner.

In turn, Ind.Code 35–43–4–4(h) specifies:

(h) A law enforcement agency that is holding as evidence property over which a person is alleged to have exerted unau-

thorized control or to have otherwise obtained unlawfully, may return that property to its owner if:

(1) the property has been photographed in a manner that will serve the purpose of demonstrating the nature of the property, and if these photographs are filed with or retained by the law enforcement agency in place of the property;

(2) receipt for the property is obtained from the owner upon delivery by the law enforcement agency;

(3) the prosecuting attorney who is prosecuting a case that involves the property has not requested the law enforcement agency to decline requests for return of the property to its owner; and

(4) the property may be lawfully possessed by the owner.

■ Stanley and Rodriguez particularly argue that the State failed to obtain a receipt from the rightful owner of the property and relying on *Shropshire v. State*, (1972), 258 Ind. 70, 279 N.E.2d 219, they argue that the evidence had to be unavailable at trial before photographs could be introduced.

An officer from the Jeffersonville police department explained that the cash drawer was returned to Shirley Cunningham, the cashier who was robbed, at approximately 11:00 P.M. on the day of the robbery. She signed for the drawer. The cash recovered from Stanley and Rodriguez was returned at a later date to Ray Waterfield, the day manager for the Convenient Food Mart, who signed for it.

Prior to returning this property, it was properly photographed pursuant to IC 35–43–4–4(h)(1) and no request to retain the property was made by the prosecuting attorney pursuant to IC 35–43–3–3(h)(2). In

---

1. IC 35–1–6–5.1 was amended by Acts 1980, P.L. 200, effective February 22, 1980. Subsection (b) was rewritten. The criteria for returning evidence to its rightful owner and the criteria for using photographs as evidence at trial, rather than the items photographed, were moved to IC 35–43–4–4. The revised version is

more liberal in allowing the use of photographs as will be discussed herein, and subsection (h)(3) was altered so that a prosecutor must make a request for property to be retained. In the superseded version, the law enforcement agency and to get the prosecuting attorney's approval prior to returning property.

regard to subsection (h)(3), we think it is clear that Waterfield and Cunningham were acting in their capacities as employees and agents of the Convenient Food Mart when they signed for receipt of the stolen property. Therefore, we find no reversible error based upon the statute's receipt provision.

■ Nor do we find the defendants reliance on *Shropshire v. State, supra,* persuasive. Granted, there is language in *Shropshire* which states that evidence must be unwieldy or unavailable before photographs of that evidence can be utilized at trial. However, since *Shropshire* was decided in 1972, the General Assembly has addressed this issue to the defendants' detriment in IC 35–43–4–4(g). As explained *infra*, this subsection replaces more restrictive language in the old version of IC 35–1–6–5.1(b). IC 35–43–4–4(g) states:

(g) A judge may find that a photograph of property over which a person is alleged to have exerted unauthorized control or to have otherwise obtained unlawfully is competent evidence, if the photograph:

(1) will serve the purpose of demonstrating the nature of the property; and

(2) is otherwise admissible into evidence under all other rules of law governing the admissibility of photographs into evidence.

*The fact that it is impractical to introduce into evidence the actual property for any reason, including its size, weight, or unavailability, need not be established for a judge to find a photograph of that property to be competent evidence.* If a photograph is found to be competent evidence under this subsection, it is admissible into evidence in place of the property and to the same extent as the property itself. (Emphasis added.)

In the case at bar, there is no indication the photographs failed to demonstrate the nature of the property and therefore, no error in their admission.

■ As their third joint issue, Stanley and Rodriguez argue the State failed to show the relevancy of the knife recovered from Stanley and failed to show a proper chain of custody to support its introduction. In their argument Stanley and Rodriguez simply assert this evidence was an "evidentiary harpoon" and fail to argue the issue as raised. Therefore, they have waived any error pursuant to Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). However, we are constrained to note that a trial judge has broad discretion to determine what evidence is relevant. *E.g. Williams v. State,* (1979) Ind., 387 N.E.2d 1317, and here that discretion was not abused. The defendants were seen armed with a knife at the robbery site; their apprehension less than a block away from the market with a knife supported the eyewitness's accounts of the robbery. The knife was evidence which made it more likely than not that the defendants were the robbers. *Hill v. State,* (1978) 267 Ind. 480, 371 N.E.2d 1303.

■ The fourth joint issue before us deals with alleged instructional errors. The trial court refused to give the defendants' instruction, numbered 3, dealing with the State's burden of proof, the presumption of innocence, and the fact that an information is not evidence. These issues were adequately explained by the trial court's final instructions and the trial court did not err by refusing the tendered instruction. *E.g. Richey v. State,* (1981) Ind., 426 N.E.2d 389.

■ The trial court also refused to give defendants' instruction, numbered 5, which stated that "personal identification evidence is doubtful at best and should be subject to close scrutiny." The trial court did instruct the jurors that they were the exclusive judges of the witnesses' credibility and the weight to be given to their testimony. The trial court also instructed the jurors that they could consider a witness's ability and opportunity to observe events, his interest or bias, his conduct while testifying, and the reasonableness of his testimony in light of other evidence. We think the trial court adequately covered the credibility issue in its instructions. *Richey v. State, supra.* Furthermore, the defendants' tendered instruction would have

called improper attention to the eyewitnesses' testimony and violated the rule that credibility instructions shall be general and apply equaly to all witnesses. *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411; *Lyons v. State*, (1982) Ind., 431 N.E.2d 78.

The trial court also did not err by modifying the defendants' instruction on circumstantial evidence. The trial court gave part of this instruction, which explained that the state could prove its case by either direct evidence or circumstantial evidence, but deleted language referring to "circumstantial evidence alone" and the fact that circumstantial evidence should exlude every reasonable hypothesis of innocence. The trial court did not err because the evidence presented consisted of both direct evidence and circumstantial evidence. When mixed evidence is presented, an instruction on wholly circumstantial evidence is improper. *Rutledge v. State*, (1981) Ind., 426 N.E.2d 638; *Ball v. State*, (1980) Ind. App., 406 N.E.2d 305.

Next, Rodriguez and Stanley argue the evidence was insufficient to sustain their convictions. We have recounted the evidence most favorable to the State. We will not of course reweigh this evidence or judge the credibility of witnesses, but instead will draw all reasonable and logical inferences therefrom to determine if there is substantial evidence of probative value to support the jury's verdict. *E.g., Cornelius v. State*, (1981) Ind., 425 N.E.2d 616.

Robbery, a class B felony as charged, consists of knowing or intentionally taking property from another person, by using or threatening the use of force, while armed with a deadly weapon. Ind.Code 35–42–5–1. Clearly, there is substantial evidence of probative value to sustain Stanley's and Rodriguez's convictions.

Both defendants argue the trial court erred by imposing excessive sentences and by imposing fines. Stanley received an eight year sentence plus a $500.00 fine and $37.00 in costs. Rodriguez received a ten year sentence, a $500.00 fine and $37.00 in costs. The trial judge specified that the fines and costs could be paid at a future date when the defendants were able to pay and that they would have no bearing on their terms of imprisonment. Stanley's sentence was reduced by two years from the standard ten year sentence for class B felonies, Ind.Code 35–50–2–5, because he did not have a history of criminal activity and because he was likely to respond to rehabilitation. These are appropriate mitigating circumstances pursuant to Ind.Code 35–4.1–4–7.

A sentence will not be disturbed on appeal unless it is manifestly unreasonable. *Logsdon v. State*, (1980) Ind., 413 N.E.2d 249; *Gardner v. State*, (1979) Ind., 388 N.E.2d 513. Stanley argues that additional mitigating circumstances, primarily family hardships, should have further reduced his sentence. Considering that the charged offense involved the use of a deadly weapon and that the basic sentence for the offense is ten years, we cannot say that the sentence imposed is manifestly unreasonable.

Rodriguez argues his sentence is unreasonable because Stanley only received an eight year sentence for the same crime and because he presented evidence of mitigating factors involving family hardship. The ten year sentence which he received is the standard sentence for the crime charged. The trial court had evidence before it that Rodriguez had previously fled from police and had failed to appear on another charge, resulting in a revocation of probation. We also note that Rodriguez was the more active participant in the robbery and wielded the knife. He also threatened a witness. Although the trial court did not find these factors to be aggravating circumstances, they may well have been balanced against the mitigating circumstances which Rodriguez presented. Like Stanley's sentence, Rodriguez's sentence is not manifestly unreasonable.

Both men argue that the trial court erred by imposing fines because they were indigent. They also argue that the trial court should have conducted a hearing pursuant to Ind.Code 35–1–44–8 to determine if they were indigent. However, the trial

court was already aware of their indigency, they were represented by appointed counsel because of it, and noted that their length of imprisonment would not be affected by the fines. IC 35–1–44–8 is intended to insure that an indigent defendant will not be imprisoned as a result of his failure to pay a fine. We are not faced with that situation in the case at bar. We find no error in the sentences.

 Turning to the individual issues Rodriguez raises, we find no errors. Rodriguez moved for a separate trial and a mistrial on the grounds that he was denied effective cross-examination due to his lawyer's prior representation of Stanley and the resulting restrictions of their attorney-client privilege. However, Stanley testified that there were no conversations between Read and himself about which he had not testified. Therefore, we do not see how Rodriguez was harmed.[2]

 Stanley has also raised the issue of separate trials. In part, he argues the attorney-client privilege was violated by Read's cross-examination of him. If Stanley had properly asserted the privilege, he might be right, but he did not assert his privilege. Instead he testified about their conversations and therefore, he waived his privilege. *Key v. State*, (1956) 235 Ind. 172, 132 N.E.2d 143.

 Stanley also argues a separate trial or a mistrial was proper because he was denied the right to call a witness on his behalf, his codefendant Rodriguez. Stanley did not demonstrate that Rodriguez would have taken the stand at a separate trial. Rodriguez could have simply asserted his Fifth Amendment rights at a separate trial. Nor did he show that Rodriguez's testimony would have been exculpatory. In such a situation Stanley was not entitled to a separate trial. *United States v. Bolden*, (D.C.

Cir.1975) 514 F.2d 1301; *United States v. Harris*, (7th Cir. 1976) 542 F.2d 1283.

 Last, we find no merit to Rodriguez's assertion that evidence of his telephone conversation with Delores Wheeler was improperly admitted because it was irrelevant and prejudicial. Threats are viewed as admissions of guilt. Therefore, they are relevant and proper for a jury's consideration. *Cox v. State*, (1981) Ind. App., 422 N.E.2d 357. A foundation must be laid for the admissibility of threats which links the threats and the defendant. *Cox v. State, supra.* Wheeler recognized Rodriguez's voice from her social contacts with him. The content of the conversation also indicated Rodriguez was the speaker. There was no error in admitting evidence of the conversation.

The trial court's judgment is affirmed in all respects.

RATLIFF, P. J., and NEAL, J., concur.

---

**2.** We do note that Read requested a mistrial and explained his concern about the potential conflict between his continued representation of Rodriguez and his prior representation of Stanley. He expressed his doubts about the propriety of continuing to the trial court. Apparently Stanley did not initially intend to take the stand. Although we find no reversible error, this situation was fraught with potential conflicts and ethical problems. We think the appropriate course to follow in the future would be to grant separate trials and the appointment not only of additional counsel, but new and separate counsel as well. Such a procedure would insure the defendants a fair trial, would protect defense counsel from ethical conflicts, and would save the State the potential expense of retrying the cases.