Keith **DEAN** and Cornelius **Harper, Petitioners,**

v.

Jack **DUCKWORTH, Warden Indiana State Prison, Respondent.**

No. S 82–340.

United States District Court, N.D. Indiana, South Bend Division.

March 28, 1983.

Tony L. Axam, Atlanta, Ga., Thomas H. Singer, South Bend, Ind., for petitioners.

Linley E. Pearson, Atty. Gen. of Ind., Indianapolis, Ind., for respondent.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case is presently before the Court on a joint petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The two petitioners, Keith Dean and Cornelius Harper, were tried and convicted in a state court jury trial on charges of kidnap, rape and robbery, for which they each received sentences of life imprisonment. Their convictions were unanimously affirmed on direct appeal by the Supreme Court of Indiana. *Dean v. State,* Ind., 433 N.E.2d 1172 (1982). After having exhausted their state court remedies *per Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) and *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), petitioners filed this application seeking federal habeas relief. The transcript of state court proceedings has been filed with this Court and carefully reviewed pursuant to *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Further, and after a thorough briefing by both sides of the issues raised in this case, a final hearing with oral argument was held before this Court on February 23, 1983.

Petitioners raise nine issues in their application for the issuance of a writ of habeas corpus. However, because one of the questions presented is dispositive of the entire petition, while the remaining eight issues argued by petitioners are wholly without merit, this Court will address but a single question: whether the joint representation of the two petitioners at trial violated their right to the effective assistance of counsel.

In the early morning hours of September 13, 1977, a twenty-nine year old white woman was abducted at gunpoint from her

home by two black males who raped and robbed her. During the course of the subsequent police investigation, the prosecutrix was shown a number of mug shots as well as photographs from a local school yearbook. In particular, she was shown some thirty-nine pictures, thirty-four in black and white, the remaining five in color. Of the five color photographs, three were Polaroid prints, two of which were of the petitioners. The prosecutrix selected several pictures of individuals who resembled her assailants. Among those so selected, two were of Richard Pickett and Larry Harper, elder brother of petitioner Cornelius Harper. The prosecutrix declared, however, that the two Polaroid snapshots of the petitioners most closely resembled her attackers. After making that identification, the prosecutrix was ushered into another room where she saw and further identified the petitioners as the individuals who had assaulted her on September 13, 1977.

Sometime between their arrest in November 1977, and their trial in April 1979, the two petitioners submitted to *ex parte* polygraph examinations at defense counsel's request. The results of those tests indicated that one of the petitioners, Cornelius Harper, knew nothing of the events surrounding the night of September 12–13, 1977, while the other petitioner, Keith Dean, might have. Despite the inconsistency of the results, nothing further was done along those lines by defense counsel until after the trial.

After a series of delays, the petitioners were finally brought to trial on April 30, 1979, and were found guilty on May 4, 1979. Immediately after the convictions of the two petitioners, Richard Pickett and Larry Harper came forward and confessed that they, and not the petitioners, had committed the crimes in question. An *ex parte* polygraph examination of Messrs. Pickett and Harper, as well as of the petitioners, was conducted. The examiners concluded that there was no indication of deception when the petitioners responded negatively, and Pickett and the elder Harper responded

affirmatively, to the question whether they had engaged in sexual intercourse with the prosecutrix.

Armed with the above, the petitioners sought to have the verdict set aside in their post-trial motion to correct errors. Their motion was denied and, as noted above, their convictions were affirmed on appeal.

Petitioners contend that a conflict of interest existed in their joint representation at trial by a single attorney, thereby infringing on their Sixth Amendment right to counsel. Respondent, on the other hand, argues that no such violation of their right to counsel occurred, and, in the alternative, that if such a conflict did in fact occur it was waived beforehand by the petitioners.

■ The Sixth Amendment's guarantee of a right to counsel necessarily includes the right to the *effective* assistance of counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Where a single attorney represents more than one defendant at trial, the requirement that counsel be effective means that counsel must be free from conflicting interests. *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The mere possibility of a conflict of interest arising at trial presents no Sixth Amendment violation and imposes no duty on the trial court to inquire into the circumstances of multiple representation. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). However, the failure to appoint separate counsel, or at least to take steps to insure that no conflict exists, is reversible error where there is a timely objection made by counsel or defendants, *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), or where the possibility of conflict becomes apparent on the face of the record. *Wood v. Georgia, supra. See also Wilson v. Morris,* 699 F.2d 926 (7th Cir.1983); *United States ex rel. Williams v. Franzen,* 687 F.2d 944 (7th Cir. 1982); *Davis v. Franzen,* 671 F.2d 1056 (7th Cir.1982).[1]

1. In the recent case of *United States ex rel.*

*Ballard v. Bengston,* 702 F.2d 656 (7th Cir.

■ In the present case, neither the petitioners nor their defense counsel voiced any objection to proceeding to trial without benefit of separate counsel. Thus, "(i)n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. at 348, 100 S.Ct. at 1718, quoted in *Ross v. Heyne,* 638 F.2d 979, 983 (7th Cir. 1980). In line with the above, petitioners must demonstrate (1) the existence of an actual conflict of interest, and (2) that said conflict adversely affected the performance of trial counsel. *Id.*

■ At the February 23, 1983 hearing, counsel for petitioners very ably advanced the argument that a genuine conflict of interest existed between the petitioners and, *a fortiori,* between them and their defense counsel, because their so-called "joint defense" was not in fact joint at all. The alibi proffered by the petitioners at trial was that both Keith Dean and Cornelius Harper had spent the *evening* of September 12, 1977 together and in the presence of others during the time that the automobile used by the assailants was stolen. However, because the petitioners did not claim to have spent the entire *night* of September 12–13, 1977 together, their alibis ceased to be joint at precisely the most critical juncture in their defense, viz., accounting for their whereabouts at the time of the kidnap, rape and robbery of Ms. Sulkko, the prosecutrix.

Respondent, on the other hand, argues that the petitioners' alibi defense was a truly joint defense because the petitioners adamantly maintained having spent the evening of September 12, 1977 together and buttressed that claim by their mutual recollections of an injury to Keith Dean's lip occurring on that same day. Later, respondent argues, when that defense was demolished by the testimony of petitioner Dean's school principal that the injury to Mr. Dean's lip had occurred not on September 12, 1977, but rather five days earlier, both the alibi and credibility of each petitioner were destroyed thereby.

A careful review of the record does not support respondent's contention that the alibi presented a joint defense. Without passing on the question whether the timing of the theft of the station wagon used in the assault is central to the petitioners' alibi defense, the fact remains that no joint defense, alibi or otherwise, existed as to what occurred in the critical morning hours of September 13, 1977. Thus, with the destruction of the joint alibi defense relating to the evening hours of September 12, 1977, it became immediately apparent that aside from their mutual desire to be acquitted, the interests of the petitioners were not identical. For example, while it is not for this Court to determine the validity, reliability, or even admissibility of the polygraph examinations administered in this case, the fact that defense counsel had each of the petitioners undergo such tests prior to trial, and the results were inconsistent, indicated a strong likelihood that it would have been in the best interests of at least one of the petitioners to subject his co-defendant to a rigorous cross-examination of that individual's knowledge of the events of September 12–13, 1977. Because both petitioners were represented by the same attorney at trial, however, no such examination was possible without undermining the rule that one's attorney must be "devoted solely to the interests of his client." *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 209 (3d Cir.1973).

1983), at part III of the Court's per curiam opinion, the Court held that the trial court's failure to inquire closely into the reasons for defense counsel's request for a continuance of the trial date, due to an alleged conflict of interests appearing between two of his clients, and the failure of the trial court to articulate plainly on the record the reasons for denying the motion for a continuance, constituted grounds for requiring an evidentiary hearing on the issue whether the petitioners were denied their Sixth Amendment rights. While that case is certainly not identical to the facts in the present case, the Court's holding therein nonetheless manifests the extremely grave concerns involved where violations of one's Sixth Amendment rights are alleged.

As a general proposition, an actual conflict of interest is not demonstrated merely by a showing that cross-examination of a co-defendant would have been possible with separate as opposed to joint representation. *See, e.g., Smith v. Regan,* 583 F.2d 72 (2d Cir.1978). Thus, as Justice Marshall noted in dissent in *Cuyler v. Sullivan, supra.*

> There is a possibility of conflict, then, if the interests of the defendants *may diverge* at some point so as to place the attorney under inconsistent duties. There is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests *do diverge* with respect to a material factual or legal issue or to a course of action.

*Cuyler v. Sullivan,* 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3 (Marshall, J., dissenting). *See also Turnquest v. Wainwright,* 651 F.2d 331, 333 (5th Cir.1981).

Under the facts of this case, it is a close question whether the requisite degree of actual conflict has been demonstrated by the petitioners. That question is further muddied by this Court's decision that the concepts of "conflict" and "adverse effect" are merged in this case. *See, United States ex rel. Sullivan v. Cuyler,* 553 F.Supp. 1236, 1242 (E.D.Pa.1982). However, where, as here, the defenses are not joint, and "in cases such as this where the line between guilt and innocence is not altogether clear, the Sixth Amendment right to counsel becomes paramount." *United States ex rel. Sullivan v. Cuyler, supra,* at 1260.

Although it is the decision of this Court that an actual conflict, adversely affecting the performance of trial counsel, appears on the face of the state court record, the question of whether petitioners waived their right to separate counsel must be addressed. A review of the relevant portion of the colloquy that took place between the trial court and the petitioners prior to trial appears below:

BY THE COURT:

Q. Which of you is Cornelius Harper?

A. I am.

Q. Stand by the microphone. You are Cornelius Harper?

A. Yes.

Q. In this cause, you and your co-defendant, Keith Dean, who is present in Court are each represented by the same attorney. There is a possibility when two defendants charged with the same offense are represented by the same attorney that a conflict could develop because your defense and that of your co-defendant might be different. That may not be the case. In any event, are you satisfied that both you and your co-defendant can be represented by the same attorney?

A. Yes.

Q. You waive any possible conflict that might develop in that regard?

A. I don't understand your question.

Q. Are you stating now in Court that you are satisfied that your defense and your co-defendant's defense are similar or the same and can be handled by one attorney?

A. Yes.

Q. Are your answers the same or different?

A. They are the same.

Petitioners place great emphasis on the equivocal response of Cornelius Harper to the question whether he waived his right to separate counsel, i.e., "I don't understand your question." However, the trial judge did not ignore the response, but instead rephrased the question to insure that the defendant-petitioner understood that he was voluntarily giving up his right to have separate counsel represent him at trial. Thus, the hoary adage, "text out of context is mere pretext" seems particularly apposite here.

Nonetheless, this Court is unwilling to hold that the strong presumption against the waiver of one's constitutionally protected rights has been overcome here. Just as with the questions raised above regarding the closeness of the issues of "actual conflict" and "adverse effect" on representation, the question whether the petitioners

made knowing and intelligent waivers of their rights to separate counsel is also a close one. The issue is exacerbated by the fine line this Court must draw between the Sixth Amendment's guarantee of effective (read, separate) counsel under *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) and its progeny on the one hand, and the right to proceed to trial without benefit of counsel on the other. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975) (the right to waive counsel necessarily includes the right to waive separate representation). As counsel for respondent perceptively noted at the February 23, 1983 habeas hearing, had the state trial court ordered the petitioners to proceed to trial with separate counsel and convictions had resulted, the "representation pendulum" might have swung in the opposite direction and this Court could now be deciding whether the petitioners' Sixth Amendment rights under *Faretta, supra,* had been violated. Although it is true that petitioners were seventeen months older at trial than they had been at the time of their arrests, and neither of them could be described as wide-eyed innocents, this Court refuses to accept their putative waiver of such a critical right as having been made knowingly and intelligently, with a full understanding of the possible consequences of their foregoing such a right. *United States ex rel. Ross v. Franzen,* 668 F.2d 933 (7th Cir.1982) (courts indulge every reasonable presumption against the waiver of constitutional rights).

In this petition the Court is confronted with the eternal nemesis of sound juridical decision-making, the proverbial "hard case." This Court must candidly admit that it has rarely been confronted with a situation where the underlying equities seem to tug so strongly in one direction, while the law points in the other. The record seems almost to cry out that a grave injustice may have been done. The critical question, however, is not whether a wrong has been committed, but rather whether it is for this Court to right that wrong.

Throughout the evolutionary course of Anglo-American jurisprudence, the fiercest battles have been fought between those whose motto is "Fiat justitia, ruat coelum," and those advocating an unflagging certainty and logical consistency in the law. The struggle to balance these legal antinomies of justice in the individual case versus predictability and uniformity in the law must, in the end, tip in favor of consistency, uniformity and certainty. B. Cardozo, The Nature of the Judicial Process 103 (1921). Even so, the role played by *stare decisis* in our common law tradition is not an end in itself, for a too strenuous emphasis on predictability can lead to a hardening of the law's arteries not unlike that experienced in Lord Coke's day.

In *United States ex rel. Sullivan v. Cuyler,* 553 F.Supp. 1236 (E.D.Pa.1982), the Magistrate concluded his Findings and Recommendations with the following:

I am not unmindful that the nature of federal habeas corpus is a "source of friction between state and federal courts." *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981). But the court has also recognized that habeas corpus in the federal courts by one convicted of a criminal offense is a proper procedure "to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution." *Townsend v. Sain,* 372 U.S. 293, 311, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963) (quoting *Hawk v. Olson,* 326 U.S. 271, 274, 66 S.Ct. 116, 118, 90 L.Ed. 61 (1945). Particularly in cases such as this where the line between guilt and innocence is not altogether clear, the Sixth Amendment right to counsel becomes paramount.

In all cases the constitutional safeguards are to be jealously preserved for the benefit of the accused, but especially is this true where the scales of justice may be delicately poised between guilt and innocence. Then error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial, since there is a real chance that it might have provided

the slight impetus which swung the scales toward guilt.

*Glasser v. United States, supra,* 315 U.S. at 67, 62 S.Ct. at 463–64.

The words of now Senior Judge Davis are as pertinent now as when they were penned in 1966:

> "We are dealing here with the life of an individual who stood to be incarcerated for (the rest of his natural life and has already been incarcerated the past 16 years). His right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with such conflicting interests as existed here without his knowledgeable consent is little better than allowing him no lawyer at all. See *Gideon v. Wainwright,* 372 U.S. 335, 83 St. 792, 9 L.Ed.2d 799 (1963). This situation is too fraught with the danger of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of relator's rights whether or not it in fact influences the attorney or the outcome of the case."

*United States ex rel. Miller v. Myers, supra,* 253 F.Supp. [55] at 57 [ (E.D.Pa. 1966) ].

The argument that it is better to let a guilty man occasionally go free than suffer an innocent man to be unjustly punished is as valid today as it was when articulated by Solon (c. 640–558 B.C.). The concept has been a common thread running throughout Western jurisprudence in the intervening twenty-six centuries, and forms the underpinning of our belief that an accused must be presumed innocent until proven guilty. While the question of innocence or guilt of the petitioners is not to be determined in a federal habeas proceeding, the considerations involved are nonetheless always the same: the liberty interests of the petitioners must be of paramount consideration.

Accordingly, the joint petition for the writ of habeas corpus is hereby GRANTED and the writ will now issue unless the State should elect to retry Keith Dean and Cornelius Harper within 180 days. SO ORDERED.