Ramon T. RODRIGUEZ, Petitioner,

v.

G. Michael BROGLIN and Indiana
Attorney General, Defendants.

No. S82–522.

United States District Court,
N.D. Indiana,
South Bend Division.

May 10, 1983.

Ramon T. Rodriguez, pro se.

Kermit Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case is presently before the court on a petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. In addition to the pleadings contained in the application itself, the complete state court record has been filed with and examined by this court in accordance with *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The petitioner was convicted in an Indiana state court jury trial on a charge of armed robbery, for which he received a sentence of ten years' imprisonment. That conviction was unanimously affirmed on appeal. *Stanley v. State,* Ind.App., 435 N.E.2d 54 (1982). After exhausting his available state court remedies *per Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981), *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), petitioner now seeks habeas relief from this court. However, and before proceeding to an analysis and discussion of the merits of petitioner's claim, this court must first address itself to two collateral motions filed by the petitioner, *viz.,* a motion for the appointment of counsel and a request for an evidentiary hearing.

■ It is axiomatic that there is no constitutional right to appointed counsel in a civil case. *Thomas v. Pate,* 493 F.2d 151 (7th Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). Rather, the decision whether to appoint counsel in a civil action rests within the sound discretion of the trial court. *McBride v. Soos,* 594 F.2d 610 (7th Cir.1979). However, that discretion is not unfettered. Thus, when confronted with a request for appointed counsel, the court must take into consideration such factors as the legal and factual merits of the claim, the complexity of the issues presented, any physical or mental impairment suffered by the applicant which would unduly prejudice the prosecution of his claim, and whether the nature of the claim necessitates investigative work which the applicant is unable to do himself. *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981). See also, *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983); *McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982); *Caruth v. Pinkney,* 683 F.2d 1044 (7th Cir.1982). A caveat to the above is the clear wording of the *forma pauperis* statute: "[t]he Court may *request* an attorney to represent any such person unable to employ counsel ..." 28 U.S.C. § 1915(d) (emphasis added). Thus, this court cannot "appoint" counsel *stricto sensu,* although it may request an attorney to act on behalf of an indigent applicant where the criteria set forth above are met. See, D. Bagwell, "Procedural Aspects of Prisoner § 1983 and § 2254 Cases in the Fifth and Eleventh Circuits," 95 F.R.D. 435, 443 (1982).

■ Bearing the above carefully in mind, this court turns now to the reasons set forth in petitioner's Verified Motion for Appointment of Counsel. The gist of the seven reasons articulated by the petitioner in his motion is that he is poor, ignorant of legal matters, is of Hispanic descent (and therefore has difficulty with the English language), and that the issues involved are complex.

Poverty, of course, is a general prerequisite to seeking appointed counsel under 28 U.S.C. § 1915(d), but is largely irrelevant to the question whether one has a meritorious claim. As for petitioner's contention that he is ignorant of the law, this court takes note of the first-rate appearance of the pleadings filed by the petitioner to date. In particular, this court notes that the petitioner's well researched memorandum in support of his traverse to the return is of a quality which has only rarely, if ever, been

equalled by other inmate pleadings in similar actions. Further, there is nothing in the record to indicate that the paperwork filed by the petitioner is not his own work-product. Thus, while he may not be formally schooled in the law, this court sees nothing to indicate that the petitioner is genuinely ignorant of the law, at least as it relates to his application for habeas relief.

The above would also seem to dispose of petitioner's contention that his Hispanic heritage precludes him from effectively using the English language. While the petition is not free of grammatical missteps, the few errors which do appear hardly rise to the level of a solecism, much less reveal an inability to frame his arguments in clear English.

Finally, this court disagrees with petitioner's characterization of the issues involved as "complex." There is but a single issue raised in the habeas application: whether petitioner's Sixth Amendment right to the effective assistance of counsel was violated by the alleged inability of his defense counsel to cross-examine effectively petitioner's co-defendant. The difficulties encountered with Sixth Amendment issues can occasionally appear intractable, as witness this court's recent opinion in *Dean v. Duckworth,* 559 F.Supp. 1331 (N.D.Ind. 1983). However, a careful review of the state court record and the pleadings contained in this petition reveal no such difficulties. Therefore, after giving due consideration to the criteria enunciated in *Maclin v. Freake, supra,* and its progeny, as well as to the reasons set forth by petitioner, this court hereby DENIES petitioner's request for the appointment of counsel. *Accord, see Childs v. Duckworth,* 705 F.2d 915, at 922 (7th Cir.1983).

Petitioner also demands that an evidentiary hearing be held in this matter on the effectiveness of counsel issue. Petitioner contends that "the Indiana courts have applied an incorrect constitutional standard in disposing of the claim raised by petitioner Rodriguez" and that "the state court's decision rests upon an error of law ..." Petitioner goes on to contend that this petition involves mixed questions of law and fact.

Any question relating to the purported necessity of a court sitting in habeas corpus to hold an evidentiary hearing must begin with 28 U.S.C. § 2254(d).

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is pro-

duced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

■ It is true that mixed determinations of law and fact are not entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). However, where the petitioner received a full and fair hearing on the factual issue(s) as represented by written opinion, an evidentiary hearing is unnecessary. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *United States ex rel. Ross v. Franzen,* 668 F.2d 933 (7th Cir.1982). Thus, absent a showing that the state proceedings were less than full and fair, a federal habeas court is required to accept factual determinations of the state court(s) if those findings are supported by the record. *Holleman v. Duckworth,* 700 F.2d 391 (7th Cir.1983).

■ Bearing the above carefully in mind, this court notes that petitioner raises precisely the same issue herein as was addressed to, and decided by, the Indiana Court of Appeals. 435 N.E.2d at 61. A careful review of the state court record discloses, contrary to petitioner's assertions, the absence of any truly "mixed" questions of law and fact relating to the questioning of petitioner's co-defendant by petitioner's defense counsel. While Sixth Amendment claims regarding the effectiveness of counsel inevitably involve questions of fact to some degree, as well as questions of law, the state court record and pleadings compiled in this habeas petition are more than sufficient to resolve the issue presented. Accordingly, petitioner's motion for an evidentiary hearing is hereby DENIED.

As noted above, of the various issues raised by the petitioner on his direct appeal, the only one presently before this court is that of alleged ineffective assistance of counsel. Petitioner contends that "he was denied effective cross-examination due to this lawyer's prior representation of [co-defendant] Stanley and the resulting restrictions of their attorney-client privilege." 435 N.E.2d at 54. Petitioner argues that his

conviction was obtained in violation of the Sixth and Fourteenth Amendments of the United States Constitution; that is, he was denied his constitutional right to effectively confront and cross-examine witnesses, in that, his trial counsel had previously been attorney of record for Rodriguez's co-defendant and, because of this, was limited in his cross-examination of said co-defendant, in order not to violate the attorney-client privilege established between trial counsel and said co-defendant which, in turn, was fundamentally unfair and resulted in Petitioner Rodriguez being denied due process.

The facts of this case are set out by the Indiana Court of Appeals' opinion at pages 57–58:

The evidence favorable to the State reveals that Stanley and Rodriguez were in a Convenient Food Mart in Jeffersonville, Indiana, on March 22, 1980 at approximately 8:15 P.M. They approached the cashier, each with a soft drink in hand. Stanley paid for his drink and moved away from the counter. Rodriguez drew a knife and said "I'll pay for it with this." Then he went behind the counter, pushed the clerk to the floor, and removed the cash register's black money tray. He said

to the clerk, "if you call the police I'll come back and kill you."

While these events were occurring a stockboy, Delbert Baker, heard the cashier scream for him and looked up to see Stanley. Stanley pushed Baker back and said, "Stay back and you won't get hurt." Next, Baker heard someone say, "Let's go", and Stanley left.

During the robbery, a customer, Delores Wheeler, was standing near the check-out counter and observed the events. She recognized the knife wielding robber as Rodriguez, whom she had known for approximately five years.

The cashier called the police and as they approached the store, they saw the defendants in a parking lot within a block of the store. Stanley was carrying the cash drawer and Rodriguez was carrying a soft drink. As the officers approached, Stanley dropped the money drawer on the ground. The officers found small change strewn about the area near the cash drawer.

The officers arrested the defendants and during the pat down search for weapons, they found a knife in Stanley's pocket. A more extensive search at the police station revealed that Rodriguez had $95.54 on his person and Stanley $59.33. On Rodriguez, the police also found a produce receipt made out to Convenient Food Mart # 117 and dated March 19, 1980. On both defendants, a majority of the money found was in change. Both defendants also had quantities of food stamps.

The defendants were arraigned and counsel, Charles G. Read, was appointed on March 31, 1980. On August 12, 1980, Read moved to have additional counsel appointed because of potential conflicts of interest between the defendants. Daniel R. Marra was appointed to represent Stanley on November 3, 1980.

Approximately one month after the robbery, Delores Wheeler received a telephone call and recognized the caller as Rodriguez by his voice. Rodriguez asked Wheeler if she was the person who had identified him to the police. Wheeler responded that she wasn't and Rodriguez said, "Well if you are I'm gonna get you and your family."

At trial, Rodriguez's co-defendant, Stanley, elected to take the stand. The substance of his testimony was that he had not been a participant in the robbery though he admitted that he met with Rodriguez, as a coincidence, shortly after the crime and had taken money from the tray which he claims was in the possession of Stanley. His version of the facts inculpated Rodriguez as the perpetrator of the robbery.

At the time Stanley elected to take the stand, Rodriguez's counsel, Read, moved for a mistrial based on the fact that he had had attorney-client interviews with both defendants prior to appointment of counsel for Stanley and that "it may be prejudicial on behalf of my client Mr. Rodriguez in my ability to effectively cross-examine Defendant Stanley ..." (Tr. 304). Read could not give specific reasons for the possible prejudice and the court denied the motion for the reason that there had "been no showing as of yet of the fact that this puts either Defendant in grave peril or extreme danger." (Tr. 305).

On cross-examination, Read asked Stanley:

Q. 188 You've been in Court, you've answered Mr. Marra's questions. You've answered Mr. Lazinsky's questions, has there been anything you said here today, let me put it in reverse. During the period of time that I was still your attorney, I still represented you and before Mr. Marra took the case, was there anything that you disclosed to me that you have not already said here in Court today?

A. To my knowledge no.

Q. 189 Now you're under oath and I just want you to answer yes or no to that question.

A. No. (Tr. pp. 334–335).

On appeal, the state court of appeals held that because Stanley had testified to the substance of his conversation with Read no harm resulted to Rodriguez.

Turning to the individual issues Rodriguez raises, we find no errors. Rodriguez moved for a separate trial and a mistrial on the grounds that he was denied effective cross-examination due to his lawyer's prior representation of Stanley and the resulting restrictions of their attorney-client privilege. However, Stanley testified that there were no conversations between Read and himself about which he had not testified. Therefore, we do not see how Rodriguez was harmed. 435 N.E.2d at 61.

■ The Sixth Amendment's guarantee of a right to counsel necessarily includes the right to the *effective* assistance of counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The Seventh Circuit articulated the standard for determining effectiveness claims under the Sixth Amendment as one of whether the attorney met a "minimum professional standard." *United States ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). Where a conflict of interest has been alleged, the standard is

> that a criminal defendant [must] be represented not only by counsel satisfying at least a minimum standard of professional competency, but also by counsel whose undivided loyalties lie with his client.

*United States v. Jeffers,* 520 F.2d 1256, 1263 (7th Cir.1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). This concern for conflicts of interest stems from the problem of one attorney representing more than one client at trial. See, *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1042). Thus, as this court noted in *Dean v. Duckworth, supra.*

> the failure to appoint separate counsel, or at least to take steps to insure that no conflict exists, is reversible error where there is a timely objection made by counsel or defendants, *Holloway v. Arkansas,* 435 U.S. 475 [98 S.Ct. 1173, 55 L.Ed.2d 426] (1978), or where the possibility of

conflict becomes apparent on the face of the record. [citations omitted].

559 F.Supp. at 1333.

■ Even where there has been joint representation of defendants by a single attorney, a defendant who later wishes to challenge the effectiveness of his counsel must demonstrate (1) the existence of an actual conflict of interests, and (2) that the conflict adversely affected the performance of his trial counsel. *Cuyler v. Sullivan,* 446 U.S. at 348, 100 S.Ct. at 1718; *Ross v. Heyne,* 638 F.2d 979, 983 (7th Cir.1980). See also, *United States v. Medina-Herrera,* 606 F.2d 770 (7th Cir.1979), *cert. denied,* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980); *United States v. Mavrick,* 601 F.2d 921 (7th Cir.1979); *United States ex rel. McClindon v. Warden,* 575 F.2d 108 (7th Cir.), *cert. denied,* 439 U.S. 856, 99 S.Ct. 170, 58 L.Ed.2d 163 (1978); *Dean v. Duckworth, supra.*

■ There is no evidence in this case that an actual conflict of interest occurred or that Rodriguez's counsel overcompensated by failing to cross-examine Stanley fully for fear of misusing any confidential information. As the state court noted, Stanley testified that there were no conversations between Read and himself about which Stanley had not testified. Accordingly, there remained no confidential areas which Rodriguez's counsel was required to avoid in cross-examining Stanley. While prior to Stanley's taking the stand, attorney Read might have had some reason to believe, depending on the substance of Stanley's testimony, that a potential conflict of interest might develop, after Rodriguez testified it became apparent that no conflict existed. Rodriguez did not renew his motion for a mistrial or make a showing that a conflict had harmed him. Neither in his state appellate brief nor in his petition to this court had Rodriguez stated how his cross-examination was actually limited or how he was actually prejudiced by the procedure followed by the trial court. In short, there is nothing in this record to indicate that petitioner was deprived of a fundamentally fair trial, or that he was denied his right to the

effective assistance of counsel.[1] Accordingly, the writ is hereby DENIED, petition DISMISSED. SO ORDERED.

---

1. At page 61 of the Indiana Court of Appeals' opinion, footnote 2, the Court stated "We think the appropriate course to follow in the future would be to grant separate trials and the appointment not only of additional counsel, but new and separate counsel as well." This court notes its approval of that particular admonition.