## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2016, 6:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Muhamed Dugonjic, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 30, 2016 <br><br> Court of Appeals Case No. <br> 29A02-1512-CR-2281 <br><br> Appeal from the Hamilton <br> Superior Court <br><br> The Honorable Steven R. Nation, <br> Judge <br><br> Trial Court Cause No. <br> 29D01-1405-FB-3452 |

**Crone, Judge.**

# Case Summary

[1] Muhamed Dugonjic appeals his convictions for class B felony criminal deviate conduct and class D felony sexual battery. He maintains that the trial court improperly instructed the jury concerning the definitions of certain elements of his offenses; abused its discretion in admitting evidence of certain conduct by defense counsel and in refusing to admit certain evidence concerning the victim's past sexual conduct; and abused its discretion in its treatment of aggravating factors during sentencing. We conclude that the trial court acted within its discretion in instructing the jury and in its treatment of aggravators during sentencing. We also conclude that the trial court did not commit reversible error in admitting evidence concerning defense counsel's conduct or in excluding certain evidence concerning A.D.'s sexual history. Therefore, we affirm Dugonjic's convictions and sentence.

# Facts and Procedural History

[2] In 2010, A.D. moved from Bosnia to Carmel, Indiana, to attend school and work as an au pair. The au pair program provided her with a host family. When her program ended, she worked as a live-in nanny for her host family.

[3] In December 2010, A.D. connected on Facebook with Dugonjic, a Bosnian immigrant who lived in Arizona and worked as a truck driver. The two began to communicate by phone and through text messages, and in the late summer of 2011, A.D. made her first of three trips to Arizona to visit Dugonjic. Dugonjic visited A.D. in Indiana many times. During the visits, the couple

sometimes stayed at a hotel, where they engaged in various sexual acts short of sexual intercourse. A.D. testified that she intended to abstain from premarital sexual intercourse due to her religious beliefs, but she allowed Dugonjic to touch her breasts and vagina because he had assured her that they were going to stay together and she was "100 percent sure" that they would marry. Tr. at 701, 708, 789, 800-01.

[4] In October 2012, a woman called A.D. and informed her that she was engaged to Dugonjic. This prompted A.D. to investigate Dugonjic's background, whereupon she discovered that he was married to a woman in Bosnia. When she confronted him, Dugonjic confessed that he was married, had a child, and was several years older than he had originally represented. The couple ended the romantic relationship but continued to visit each other intermittently.

[5] In May 2013, A.D. informed Dugonjic that she was pursuing another relationship. A month later, Dugonjic texted A.D., told her that he was in Indiana, and asked to meet her one last time for five minutes at a previous rendezvous spot behind a discount store. A.D. declined a private meeting but agreed to meet him inside the store. The two walked and talked inside the store, and Dugonjic kissed her. A.D. agreed to drive him to his vehicle. When they got to his vehicle, which was parked behind the store, Dugonjic kissed A.D. and implored her to leave with him. A.D. refused and reminded him of his history of lying to her. An argument ensued. A.D. received a text message from her new boyfriend, and Dugonjic grabbed her purse and demanded to see her phone. She quickly powered it off, and Dugonjic grabbed it, causing it to

break. He demanded her PIN code, and she gave him a false code. When he discovered that he was locked out of the phone, he removed its SIM card and exited the vehicle.

[6] A.D. followed Dugonjic, seeking the return of her SIM card and explaining that Dugonjic would not be able to access its contents because her phone was under her host family's account. He approached her, said that he loved her, accused her of "cheat[ing]" on him, and kissed her in a "rough" and "aggressive manner." *Id*. at 727. He then put his hand under her shirt and began kissing her breasts. She told him that she just wanted her SIM card and reminded him of his promise that their meeting would last only five minutes. He then put his hand inside her pants and "started pushing his fingers" "inside [her]," "[i]n [her] vagina," "deep inside and it was hurting." *Id*. at 728-29. A.D. implored him to stop, but he refused. He turned her around with "his hand deep inside" her, and she fell to the pavement and thought she was going to "pass out." *Id*. at 729-30. She begged him to let go of her, and he refused. A truck appeared and shone its headlights on them, at which point A.D. told Dugonjic that she would leave with him if he would just let go of her. He grabbed her hand and attempted to pull her inside his truck. She broke away from his grip and ran across the street to an apartment complex. She entered an open garage and went inside the adjoining apartment to seek help. The residents phoned 911 on her behalf.

[7] Emergency personnel arrived, and A.D. described the attack to a female medic. When she went to the restroom, she discovered that her genitals were bleeding.

She was taken to a nearby hospital and examined by a sexual assault nurse, who observed injuries to A.D.'s clitoris and labia minor crease as well as bruising consistent with Dugonjic clutching her arm and injuries consistent with having fallen to the pavement. Police found A.D.'s vehicle behind the store, still running and unlocked. They also found her broken phone and SIM card.

[8] The State charged Dugonjic with class B felony criminal deviate conduct, class C felony battery resulting in serious bodily injury, and class D felony sexual battery. Seven months before trial, the State filed a motion in limine, seeking to limit the admission of evidence of A.D.'s prior sexual activity pursuant to Indiana's Rape Shield Rule. The trial court conducted hearings and granted the State's motion, limiting the admission to evidence relevant to Dugonjic's claim that A.D. had consented to the charged conduct. A jury found Dugonjic guilty of class B felony criminal deviate conduct and class D felony sexual battery. The trial court sentenced him to twelve years for criminal deviate conduct and a concurrent one and one-half years for sexual battery.

[9] Dugonjic now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in instructing the jury on the definitions of intent to arouse and penetration.

[10] Dugonjic maintains that the trial court committed reversible error by giving certain jury instructions. "The purpose of a jury instruction is to inform the

jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015) (internal quotation marks omitted), *cert. denied* (2016). We review a trial court's instructions to the jury for an abuse of discretion. *Id*. An abuse of discretion occurs when the instruction is erroneous and the instructions taken as a whole misstate the law or otherwise mislead the jury. *Id.* at 484-85. "When evaluating the jury instructions on appeal this Court looks to whether the tendered instructions correctly state the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions." *Id*. "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law of the case." *Flake v. State*, 767 N.E.2d 1004, 1007 (Ind. Ct. App. 2002). "Instructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved." *Ludy v. State*, 784 N.E.2d 459, 461 (Ind. 2003).

[11] Dugonjic first challenges Instruction 14, which reads, "The element of 'with the intent to arouse or satisfy the sexual desires' *may* be proven by circumstantial evidence, and the jury *may* consider the natural and usual [con]sequence to which the defendant's conduct points." Appellant's App. at 331 (emphases added). Instruction 14 must be read in conjunction with Instruction 7, which reads:

The crime of Sexual Battery which is the basis for Count 3, is defined by statute in pertinent part as follows:

A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person … touches another person when that person is … compelled to submit to the touching by force … commits sexual battery, a Class D felony.

Before you may convict the Defendant, the State must have proved each of the following essential elements beyond a reasonable doubt:

1.  The Defendant

2.  with the intent to arouse or satisfy his own sexual desires or the sexual desires of [A.D.]

3.  knowingly

4.  touched [A.D.] when [A.D.] was compelled to submit to the touching by force.

If the State failed to prove each of these essential elements beyond a reasonable doubt, you must find the Defendant not guilty of Sexual Battery, a Class D felony.

*Id*. at 324. *See also* Ind. Code § 35-42-4-8 (2013) ("A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is … compelled to submit to the touching by force or the imminent threat of force … commits sexual battery, a Class D felony.").

[12] Dugonjic asserts that Instruction 14 improperly shifts the burden of proof to him by creating a mandatory presumption. In *Winegeart v. State*, our supreme court affirmed the propriety of a similar jury instruction, which read in pertinent part, "A determination of the defendant's intent *may* be arrived at by the jury from a consideration of the defendant's conduct and the *natural and usual consequences* to which such conduct logically and reasonably points." 665 N.E.2d 893, 903 n.3 (Ind. 1996) (emphases added). There, as here, the trial court used the permissive term "may." *Id*. The *Winegeart* court concluded that the instruction's use of "may" described a permissive inference rather than a mandatory presumption. *Id*. at 904. Likewise, here, Instruction 14 "did not mandate that the jury employ any particular presumptions but merely permitted it to draw appropriate inferences from the evidence." *Id*.

[13] Dugonjic relies on *Ludy*, 784 N.E.2d at 461, as support for his contention that Instruction 14 unduly emphasized particular evidence. In *Ludy*, our supreme court found an instruction improper because it singled out the "uncorroborated testimony of the alleged victim" as a proper basis for a conviction and thus invited the jury to violate its obligation to consider all the evidence. *Id*. at 460.[1] Similarly, in *Keller v. State*, our supreme court reversed a burglary conviction based on a jury instruction that included not only a definition of dwelling but

---

[1] The *Ludy* court also explained that the instruction was worded more like an appellate standard of review than a jury instruction and emphasized that the use of certain language in appellate opinions does not make that same language proper for use in jury instructions. 784 N.E.2d at 462. This reasoning does not apply here, as the "natural and usual consequence" language has been held to be proper for jury instructions. *Winegeart*, 665 N.E.2d at 903 n.3. Moreover, the language of Instruction 14 was not technical, as it was in *Ludy*, which included the term "uncorroborated." 784 N.E.2d at 461.

also a specific example of a dwelling that coincided with specific evidence. 47 N.E.3d 1205, 1209-10 (Ind. 2016). The *Keller* court found this to be misleading, explaining that it unduly emphasized a specific piece of evidence and thus invaded the province of the jury. *Id*.

[14] In contrast, here, Instruction 14 does not single out any particular conduct by Dugonjic (which would include kissing A.D.'s mouth and breasts and forcing his finger in her vagina). Rather, it merely states that when evaluating whether Dugonjic acted with "intent to arouse or satisfy" his or A.D.'s sexual desires the jury could permissibly infer that intent from the natural and usual consequences of his conduct. Instruction 14 neither unduly emphasizes specific evidence nor hinders the jury in carrying out its duty to consider all the evidence. As such, the trial court acted within its discretion in giving it.

[15] Dugonjic also challenges Instruction 13, which reads, "Proof of the slightest penetration is sufficient to sustain a conviction for criminal deviate conduct. Penetration does not require the vagina to be penetrated, only that the female sex organ, including the external genitalia, be penetrated." Appellant's App. at 330. This instruction must be read in context with Instruction 5, which reads,

> The crime of Criminal Deviate Conduct which is the basis for Count 1 is defined by statute in pertinent part as follows:
>
> A person who knowingly … causes another person to perform or submit to deviate sexual conduct when … the other person is compelled by force … commits criminal deviate conduct, a Class B felony.

Before you may convict the Defendant, the State must have proved each of the following essential elements beyond a reasonable doubt:

1. The Defendant

2. knowingly

3. caused [A.D.] to submit to deviate sexual conduct when

4. [A.D.] was compelled by force.

If the State failed to prove each of these essential elements beyond a reasonable doubt, you must find the Defendant not guilty of Criminal Deviate Conduct, a Class B felony.

*Id*. at 322. *See also* Ind. Code § 35-41-1-9 (repealed July 1, 2014) ("'Deviate sexual conduct' means an act involving … the penetration of the sex organ or anus of a person by an object.").

[16] Dugonjic submits that Instruction 13 amounts to an incorrect statement of the law because it states that the penetration necessary to convict him of criminal deviate conduct includes the "slightest penetration" of the "vagina" or "female sex organ, including the external genitalia." Appellant's App. at 330. He relies on *Thompson v. State*, arguing that the "slightest penetration" language is appropriate only for instructions on the offense of rape. 674 N.E.2d 1307, 1311 (Ind. 1996). There, our supreme court was faced not with a challenge to a jury instruction but instead with a challenge to the sufficiency of evidence to support the element of penetration in both the defendant's rape conviction and criminal deviate conduct conviction. The *Thompson* court held the evidence insufficient

to support the penetration element of criminal deviate conduct. However, the *Thompson* court narrowly tailored its holding based on the unique circumstances indicating that the defendant used his fingers only to assist in the penetration of his penis for purposes of committing the rape. We find *Thompson* distinguishable. Penetration is an element of only one of Dugonjic's charged offenses, and that offense, criminal deviate conduct, includes the element of penetration. "[W]hen the question is whether penetration occurred, it is well settled that proof of the slightest degree of penetration is sufficient." *Harding v. State*, 457 N.E.2d 1098, 1101 (Ind. 1984). In *Harding*, our supreme court held that, even though weak and equivocal, the victim's testimony concerning anal penetration was sufficient to support the defendant's conviction for criminal deviate conduct. *Id*.

[17] Dugonjic claims that Instruction 13 also confused the jury concerning the distinction between touching and penetration. He cites as support *Adcock v. State*, in which another panel of this Court found ineffective assistance of counsel based on counsel's failure to raise a sufficiency challenge to his conviction for child molesting involving penetration. 22 N.E.3d 720, 728-30 (Ind. Ct. App. 2014). There, the victim never testified that any part of her genitalia was penetrated, there was no medical evidence of penetration, and the State argued that mere contact between the male and female organs was sufficient to establish vaginal penetration. *Id*. In contrast, here, the challenged instruction went further than mere contact, requiring a finding of the "slightest penetration," and A.D. testified that Dugonjic digitally penetrated her vagina in

a forceful manner, causing her pain and bleeding. In short, Instruction 13 is supported by the evidence and is neither legally incorrect nor confusing. We find no abuse of discretion here.

## Section 2 – The trial court did not commit reversible error in admitting evidence of possible witness intimidation.

Dugonjic also challenges the admission of evidence that defense counsel engaged in conduct that could be considered witness intimidation. We review rulings on the admission or exclusion of evidence for an abuse of discretion resulting in prejudicial error. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id*. To determine whether an error prejudiced the defendant, we assess the probable impact of the challenged evidence upon the jury, in light of all the other evidence that was properly presented. *Id*. If substantial independent evidence of guilt supports the conviction, the error is harmless. *Id*.

The following exchange took place during direct examination of A.D.:

> Q. Did [Defense Counsel] come to your door one day?
>
> A. Yes, he did.
>
> Q. Do you remember when that was?
>
> A. It was last year sometime.

Q. And had he called you to see if it was okay if he came over?

A. No, he didn't.

[DEFENSE COUNSEL]: Objection. Relevance, Your Honor.

[STATE]: Judge, I believe it's very relevant. He showed up on her doorstep unannounced with an investigator.

[DEFENSE COUNSEL]: Why is that relevant?

[STATE]: To try to intimidate her.

THE COURT: Objection overruled.

Tr. at 760.

[20] It is well established that a defendant's attempt to influence witnesses is probative evidence of consciousness of guilt. *Mayes v. State*, 467 N.E.2d 1189, 1194 (Ind. 1984). The defendant's threats against the victim or other prosecution witnesses are "relevant and admissible into evidence." *Matthews v. State*, 866 N.E.2d 821, 825 (Ind. Ct. App. 2007), *trans. denied*. Nevertheless, the State must show that the threats were made by the defendant or with his knowledge or authorization. *Cox v. State*, 422 N.E.2d 357, 361-62 (Ind. Ct. App. 1981). In *Cox*, another panel of this Court reversed the defendant's conviction and remanded for a new trial where the trial court admitted evidence that unknown persons from a youth center had threatened a witness's life if he testified against Cox. *Id*. The *Cox* court emphasized that the State had failed to establish a nexus between Cox and the unidentified source of the threats. *Id*.

[21] Here, the alleged threats came not from Dugonjic but rather from members of his defense team. The State introduced evidence that defense counsel and a defense investigator made an unannounced visit to A.D.'s house before trial, during which counsel questioned her about whether she understood the seriousness of the charges and whether she would object to Dugonjic being placed on probation. Dugonjic objected on relevancy grounds. *See* Ind. Evidence Rule 401 ("Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence; and … the fact is of consequence in determining the action."). Defense counsel asserted that he visited A.D. only to investigate the case and test her "resolve." Tr. at 776. The State claimed that the evidence was relevant on the issue of whether intimidation had occurred, and the trial court overruled Dugonjic's objection. Dugonjic correctly asserts that defense counsel is obligated to interview witnesses, and the record shows that the defense deposed A.D. at length. The problem is not that defense counsel sought to interview A.D. but that the manner in which he did so suggested possible intimidation, i.e., an impromptu appearance at A.D.'s front door admittedly to test her resolve.[2]

[22] Dugonjic asserts that the State failed to connect his counsel's alleged threats to him. Unlike in *Cox*, where the threats were made by "unknown" persons, the

---

[2] In his brief, Dugonjic argues for the first time that the State's introduction of this evidence was an evidentiary harpoon. *See Benson v. State*, 762 N.E.2d 748, 749-50 (Ind. 2002) (strongly disapproving of prosecutor's questions about threats toward a witness made without any evidentiary support or foundation, yet finding error harmless). Because he did not object at trial on these grounds, his claim on this point is waived. *Myers v. State*, 887 N.E.2d 170, 184 (Ind. Ct. App. 2008), *trans. denied*.

person allegedly intimidating A.D. was a person with a close connection to the defendant. 422 N.E.2d at 361-62. Even so, we acknowledge that the record is silent as to whether Dugonjic instructed or otherwise authorized defense counsel to approach A.D. at her home to test her "resolve."

[23] However, we do not believe that the admission of this evidence amounts to prejudicial error. First, the interchange on this matter is miniscule when placed in context with the nearly 1400 pages of transcript, and any attention drawn to the alleged intimidation is more likely attributable to defense counsel addressing it during closing argument. Tr. at 1209. More importantly, Dugonjic's conviction is supported by independent evidence, including: A.D. fleeing to a nearby apartment after the attack; the apartment residents' description of A.D. as pale and distraught; A.D. bleeding from her genitalia; medical evidence of injuries to A.D.'s genitalia; medical evidence of additional injuries corroborating A.D.'s account of struggling to get away from Dugonjic's grip and falling to the pavement; police finding A.D.'s vehicle still running and unlocked, along with her broken phone and SIM card; and Dugonjic having left the scene. Based on the foregoing, we conclude that substantial independent evidence supports Dugonjic's convictions. As such, any error in the admission of the evidence was harmless.

# Section 3 – The trial court did not commit reversible error in limiting the admission of evidence concerning A.D.'s sexual history.

[24]     Dugonjic also submits that the trial court abused its discretion in limiting evidence concerning A.D.'s sexual history.  Indiana Evidence Rule 412, also known as the Rape Shield Rule, reads in pertinent part,

> (a) Prohibited Uses.  The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> (1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or
>
> (2) evidence offered to prove a victim's or witness's sexual predisposition.
>
> (b) Exceptions.
>
> (1) Criminal Cases.  The court may admit the following evidence in a criminal case:
>
> ….
>
> (B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, *if offered by the defendant to prove consent* or if offered by the prosecutor; and
>
> (C) evidence whose exclusion would violate the defendant's constitutional rights.

(Emphasis added.)

"Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and importantly, to remove obstacles to reporting sex crimes." *Williams v. State*, 681 N.E.2d 195, 200 (Ind. 1997). Even if the evidence is relevant, Indiana Evidence Rule 403 allows the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice."

Here, the trial court held hearings on the State's motion in limine. At those hearings, Dugonjic was afforded the opportunity to present evidence to the trial court concerning the full extent of his past sexual relationship with A.D. The trial court did not exclude all the evidence but, because consent was at issue, merely limited the evidence to that which it found relevant to the circumstances of the case, that being conduct similar to the type of conduct that formed the basis for the charges, i.e., digital penetration of A.D.'s genitalia.

Dugonjic claims that by excluding evidence of oral sex between himself and A.D. and provocative photos that A.D. allegedly sent him, the trial court denied him his Sixth Amendment right of confrontation, particularly, the opportunity to counter the State's characterization of A.D. as a sexually naïve person who wished to abstain from sexual intercourse before marriage due to her religious beliefs. As this Court has previously explained with respect to the Sixth Amendment,

> The right to cross examination is not absolute. The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in

whatever way, and to whatever extent, the defense might wish. Furthermore, the right to confront witnesses may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. …. The Indiana Supreme Court has held that Indiana's Rape Shield Statute does not violate a defendant's Sixth Amendment right to confront witnesses absent a showing of actual impingement on cross examination.

*Oatts v. State*, 899 N.E.2d 714, 722 (Ind. Ct. App. 2009) (citations and internal quotation marks omitted).

[28] As support for his Sixth Amendment argument, Dugonjic relies on *Baker v. State*, where our supreme court reversed the accused's rape conviction and remanded for a new trial after finding prejudicial error in the trial court's exclusion of evidence concerning a recent and regular sexual relationship between the accused and the victim. 750 N.E.2d 781, 783-87 (Ind. 2001). There, evidence of the relationship itself was completely excluded. *Id.* In contrast, here, the jury heard testimony concerning Dugonjic's prior sexual relationship with A.D. The trial court limited the scope of the evidence to that which concerned the charged offenses. Thus, *Baker* is distinguishable.

[29] With respect to the excluded photographic evidence and evidence of past instances in which A.D. allegedly performed oral sex on Dugonjic, we find this to be the type of evidence that falls within the protection of the Rape Shield Rule, that is, lacking in relevance and potentially inflammatory and humiliating to the extent of putting the victim on trial. *See also* Ind. Evidence Rule 403

(probative value of this evidence would have been substantially outweighed by the danger of unfair prejudice).

[30] As for the evidence concerning alleged instances of Dugonjic performing oral sex on A.D., we disagree with the trial court's basis for rejecting this evidence (irrelevance due to dissimilarity to digital penetration) as both acts tend to indicate ways in which A.D. had allowed Dugonjic to penetrate her sexual organs in the past. That said, we find the limited relevance of this evidence to be significantly outweighed by the overwhelming medical, physical, and testimonial evidence; the remoteness in time to the couple's previous sexual relationship; and A.D.'s termination of the romantic relationship. Consent on a certain date does not equate to consent in perpetuity. Based on the foregoing, we conclude that any error in excluding the evidence of alleged acts of cunnilingus did not amount to reversible error. We therefore affirm Dugonjic's convictions.

## Section 4 – The trial court acted within its discretion in its treatment of aggravating factors during sentencing.

[31] Finally, Dugonjic challenges the trial court's treatment of aggravating factors during sentencing. Sentencing decisions rest within the sound discretion of the trial court, and as long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions

to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014). The trial court sentenced Dugonjic to concurrent terms of twelve years for his class B felony conviction and one and one-half years for his class D felony conviction. Ind. Code §§ 35-50-2-5, -7 (2013).

[32] Indiana Code Section 35-38-1-7.1 lists matters that may be considered by the trial court as aggravating and mitigating circumstances. Subsection (c) emphasizes that the list of statutory factors is not exhaustive, and subsection (d) allows the trial court to impose any sentence that is authorized by statute and permissible under the Indiana Constitution, regardless of the presence or absence of aggravators or mitigators. During sentencing, the trial court identified as an aggravating circumstance the extent to which Dugonjic's conduct exceeded the elements of the charged offenses. The court also indicated concern over his unexplained possession of $10,000 in cash at the time of his conviction as evidence of intent to flee. Our supreme court has found the "nature and circumstances of a crime [to be] a proper aggravating circumstance" where the defendant's conduct extends beyond the material elements of the offense. *Gomillia v. State*, 13 N.E.3d 846, 853 (Ind. 2014). Here, the force of Dugonjic's digital penetration of A.D.'s vagina caused A.D. to suffer bleeding and pain. She also sustained injuries to her clitoris and labia minor crease, as well as injuries stemming from the force of his grip on her and her to fall to the pavement. When A.D. begged Dugonjic to dislodge his hand from her body, he grabbed her arm and attempted to shove her into his vehicle. The incident ended because A.D. was able to break away from Dugonjic's grip

and run for help. The trial court did not abuse its discretion in identifying this aggravating factor.

[33] As for the $10,000 found on Dugonjic's person on the day of his conviction, the trial court expressed its concern that the large sum of money implicated an intent to flee. Under the unique circumstances of this case, where the defendant is a nonresident of Indiana and a regular international traveler with a family abroad, we cannot say that the court's identification of this factor is clearly against the logic and effect of the facts and circumstances before the court.

[34] Essentially, Dugonjic's sentencing argument amounts to excuses and explanations concerning the aggravating factors and invitations to assign a different weight to those factors as against the one identified mitigator, his lack of a criminal record. *See, e.g.*, Appellant's Br. at 34 (characterizing his lack of criminal history as "a mitigating circumstance entitled to substantial weight."). We remind him that "[t]he relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse [of discretion]." *Anglemyer*, 868 N.E.2d at 491. We therefore affirm his sentence.

[35] Affirmed.

Kirsch, J., and May, J., concur.